IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01695-CMA-KLM

HUNTER ADAM MELNICK,

      Plaintiff,

v.

DEAN WILLIAMS, Executive Director of Prisons, in his official capacity, and
SARAH BUTLER, Dr., Chief of Psychiatry, in her individual and official capacities,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)** [#29][1] (the "Motion"), filed by Defendants Dean Williams ("Williams") and Dr. Sarah Butler ("Dr. Butler") ("Defendants").[2]  Plaintiff filed a Response [#31] in opposition to the Motion [#29], Defendants filed a Reply [#38], and Plaintiff filed a Surreply [#42].[3]  The Motion [#29] has been referred to the undersigned for

---

[1]  "[#29]" is an example of the convention the Court uses to identify the docket number assigned to a specific document by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2] These are the only remaining Defendants in this case.  The other Defendants were dismissed by previous Order [#14].

[3]  The Surreply [#42] was improper.  Plaintiff's previous motion for leave to file a surreply was denied without prejudice as to refiling if Plaintiff could show that there was a valid basis under the

- 1 -

Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c).  *See* [#15]; [#30].  The Court has reviewed the Motion [#29], the Response [#31], the Reply [#38], the entire case file and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#29] be **GRANTED**.

## I. Background[4]

Plaintiff, a pro se[5] litigant, is an inmate at the Bent County Correctional Facility, which is part of the Colorado Department of Corrections ("CDOC").  In 2020, Plaintiff was diagnosed with gender dysphoria disorder and prescribed testosterone-blocking medication by Dr. Michelle Klaus.  *Am. Compl.* [#8] at 8.  Plaintiff alleges that she[6] has

---

law for doing so, i.e., if Defendants raised new legal arguments or new evidence for the first time in the reply.  *Minute Order* [#41].  Plaintiff did not refile a motion seeking leave of the Court, but simply filed the Surreply [#42].  Accordingly, the Court has not addressed the Surreply [#42] in this Recommendation, but notes for the record that it would not change the results of the Court's ruling.

[4]  For the purposes of resolving the Motion [#29], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#8].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006)).

[5]  The Court must liberally construe the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[6]  Because Plaintiff identifies as a transgender woman in the Amended Complaint [#8], the Court refers to Plaintiff using "she/her" pronouns.  *See id.* at 8.

repeatedly requested to take this medication and that CDOC medical providers have consistently denied her requests. *Id.* When Plaintiff initially made these requests, the treatment providers informed Plaintiff that the gender dysphoria committee had the sole discretion to prescribe the medication. *Id.*

Because Plaintiff did not know who was on the gender dysphoria committee, she "sent off kites to programming, unit captains, mental health, [and the] gender dysphoria committee[,] [requesting] to be seen." *Am. Compl.* [#8] at 8. Plaintiff also spoke with a captain and a psychiatrist, reiterating her request for "hormone therapy, [as well as] psychotherapy, [and] female facility placement[,]" but was told again that such requests needed to be addressed by the gender dysphoria committee. *Id.* Plaintiff then learned that Dr. Butler, the Chief of Psychiatry, was the head of the gender dysphoria committee, so Plaintiff sent a kite to her and "filed multiple kites again to the gender dysphoria committee[] [and] mental health." *Id.* Dr. Butler responded to Plaintiff's kite by "stating that at [that] time . . . Plaintiff would not receive any hormones and [would] be placed in a male facility."[7] *Id.* Plaintiff tried to start the grievance process multiple times relating to the gender dysphoria committee's denial of her requests. *Id.* However, she was told that the committee's decision was a "classification decision" which was not subject to grievances under AR 850-04. *Id.*

---

[7] The Court construes this sentence to mean that Plaintiff was informed she would *remain* in a male facility.

After receiving this response, Plaintiff researched the relevant administrative regulation, i.e., AR 700-14, "Management of Offenders with Gender Dysphoria." *Am. Compl.* [#8] at 8; *see also Defs.' Ex. A*, Management of Offenders with Gender Dysphoria [#38-1] ("AR 700-14"). According to Plaintiff, AR 700-14 "[is] all [about] external presentation with safety concerns, regardless of Plaintiff's feelings or gender identity." *Am. Compl.* [#8] at 8. Plaintiff "knows other transgender female offenders [who] are currently incarcerated at the Denver Women's Correctional Facility." *Id.* She alleges that, while other transgender female offenders incarcerated in Colorado have received hormone therapy, psychotherapy, gender affirmation surgery, and female facility placement, her requests to receive similar treatment have been repeatedly denied. *Id.* Plaintiff states that, because she has not received treatment for her gender dysphoria, she "has been suffering from depression, anxiety, suicidal thoughts, excessive weight gain, head banging, [and feeling] angry, frustrated . . . loss of motivation to do things, [loss of] hope for life, constantly agitated, . . . and worthless." *Id.*

On June 21, 2021, Plaintiff initiated this § 1983 action, asserting claims under the Eighth and Fourteenth Amendments to the United States Constitution. *Am. Compl.* [#8] at 4, 9. Plaintiff sues Dr. Butler in her individual capacity for monetary damages and in her official capacity for injunctive relief. Plaintiff sues Williams in his official capacity as the Executive Director of Prisons. *See Am. Compl.* [#8]; *see also Order* [#14]. Plaintiff contends that the conduct described in the Amended Complaint constitutes deliberate indifference to her medical needs in violation of the Eighth Amendment. *Id.* Plaintiff

additionally appears to challenge AR 700-14 as violating the Eighth Amendment.  *Id.* at 8; *see also Response* [#31] at 2 (referring to AR 700-14 as unconstitutional).  Further, Plaintiff makes references to her "fundamental right to be free from sex based discrimination, to be treated equally to other females, [and] to be treated with [some] form of medical treatment for gender dysphoria disorder . . . ." *Am. Compl.* [#8] at 9.  The Court construes these references to indicate that Plaintiff asserts an equal protection claim under the Fourteenth Amendment.

In the present Motion [#29], Defendants contend that Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *Motion* [#29] at 1.  Defendants argue that Plaintiff fails to state a claim for relief under either the Eighth Amendment or the Fourteenth Amendment.  *Id.* at 4-13.  Defendants additionally argue that because there are no allegations of physical injury resulting from their alleged conduct, the Prison Litigation Reform Act ("PLRA") bars Plaintiff from recovering any compensatory damages. *Id.* at 13.  Finally, Defendants argue that Dr. Butler is entitled to qualified immunity as to the claims against her in her individual capacity.  *Id.* at 14.  The Motion [#29] does not directly address the claims as to Defendant Williams in his official capacity, but appears to contend that because the claims fail to state a claim for relief, the claims against him are also subject to dismissal.[8]  The Court first addresses the Eighth Amendment claim against Dr. Butler to determine whether it states a claim for relief and the issue of qualified

---

[8]  The Court notes that Plaintiff has not alleged any conduct on the part of Williams that would state a claim against him in his individual capacity; instead, he seeks a permanent injunction against Williams in his official capacity.

immunity, as well as whether the regulation relied on by Plaintiff adequately supports as claim for an Eighth Amendment Violation.   The Court then addresses the Fourteenth Amendment claim and qualified immunity as to Dr. Butler, the claims against Williams in his official capacity, and finally the argument that the PLRA bars Plaintiff's claim for compensatory damages.

## II.  Standard of Review

### A.      Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [her] claims across the line from conceivable to plausible."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## B.   Qualified Immunity

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See, e.g.*, *Harlow v. Fitzgerald*,

457 U.S. 800, 814-18 (1982).  A government official is entitled to qualified immunity from liability for civil damages when the allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.  *Id.* at 818.  A government official is entitled to qualified immunity "[i]n all but the most exceptional cases."  *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "The key to the qualified immunity inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotation marks omitted).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established."  *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity

determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

### III.  Analysis

**A.     Eighth Amendment**

**1.     Claims Against Dr. Butler**

The Eight Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Because inmates "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The deliberate indifference analysis "involves both an objective and a subjective component."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  An inmate must establish: (1) that she was deprived of a medical need that is, objectively, "sufficiently serious"; and (2) that the defendant subjectively knew of and consciously disregarded "an excessive risk to [the] inmate['s] health or safety . . . ."  *Farmer*, 511 U.S. at 834, 837.  An "inadvertent failure to provide adequate medical care" is insufficient to show deliberate indifference.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 U.S. at 105).   Plaintiff argues that Defendants have demonstrated deliberate indifference by not providing Plaintiff with treatment for gender dysphoria.  *Am. Compl.* [#8] at 9.

"The term [g]ender dysphoria describes the psychological distress caused by identifying with the sex opposite to the one assigned at birth."  *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018) (internal quotation marks omitted).  Treatments for gender dysphoria disorder include:

- [c]hanges in gender expression and role (which may involve living part time or full time in another gender role, consistent with one's gender identity);
- [h]ormone therapy to feminize or masculinize the body;
- [s]urgery to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, facial features, body contouring);
- [p]sychotherapy (individual, family, or group) for purposes such as exploring gender identity, role, and expression; addressing the negative impact of gender dysphoria and stigma on mental health; alleviating internalized transphobia; enhancing social and peer support; improving body image; and promoting resilience.

*Id.*

As to the objective prong of the deliberate indifference analysis, Plaintiff alleges that in 2020, a doctor diagnosed her with gender dysphoria and prescribed her testosterone-blocking medication.  *Am. Compl.* [#8] at 8.  In a recent decision, the Tenth Circuit assumed, without deciding, that gender dysphoria satisfies the objective prong of the analysis as sufficiently serious.  *Hardeman v. Smash*, No. 21-7018, 2022 WL 470741, at *3 (10th Cir. Feb. 16, 2022).  This Court will also assume that gender dysphoria constitutes a serious medical need that satisfies the objective prong.  *Id.*  Defendants have not contested this nor argued that the objective prong is not satisfied.  Thus, the Court turns to the subjective prong.

Under the subjective prong of the deliberate indifference analysis, Plaintiff must "present evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle*, 429 U.S. at 106). "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). "The subjective component is akin to 'recklessness in the criminal law[.]'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

"Whether the prison official had the requisite knowledge of substantial risk to an inmate's health or safety 'is a question of fact subject to demonstration in the usual ways, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 842). To survive the motion to dismiss, Plaintiff "must allege facts supporting an inference that Defendants knew about and disregarded a 'substantial risk of harm' to [her] health or safety." *Id*. at 1277 (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

Defendants argue that Plaintiff's Eighth Amendment claim fails because she has not sufficiently alleged personal participation on the part of Dr. Butler or "that Dr. Butler consciously disregarded an excessive risk to [Plaintiff's] health and safety." *Motion* [#29] at 7; *see also Reply* [#38] at 3 (citing *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir.

2001)).   Plaintiff essentially avers as to Dr. Butler only that (1) she is the Chief of Psychiatry at CDOC, and (2) at some unspecified time after Plaintiff's reincarceration, she responded to kite(s) requesting treatment and "female facility placement" stating that "at this time the Plaintiff would not receive any hormones and [would] be placed in a male facility."  *Am. Compl.* [#8] at 8.   Plaintiff makes no allegations of having any further communications with Dr. Butler.  While Plaintiff asserts new facts in her Response [#31],[9] these are not properly before the Court.  When ruling on a motion to dismiss under Rule 12(b)(6), "a federal court may only consider facts alleged within the complaint[.]"  *Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (citation omitted); *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint").  Thus, a plaintiff cannot attempt to amend a complaint through a response in opposition to a motion to dismiss.

Plaintiff argues, however, that, because Dr. Butler was aware of Plaintiff's previous diagnosis, she "was already aware of the serious risks involved [in] not treating an individual with Gender Dysphoria Disorder, such as . . . Plaintiff."  *Response* [#31] at 2. However, "[n]ot every transgender person has gender dysphoria, and not every gender

---

[9]  For example, Plaintiff asserts that she "told Defendant Butler repeatedly in writing via kites that Plaintiff had already been taking medications and had already been diagnosed by a Doctor with Gender Dysphoria Disorder and was requesting female facility placement."  *Id.* at 1.  Plaintiff further alleges that "Defendant Butler replied in a typed up note to the Plaintiff," and that she "had personal communication directly with the Plaintiff, along with grievance responses logged in [C]DOC's system."  *Id.* at 2.

dysphoric person has the same medical needs." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019). Thus, even if Dr. Butler was aware of Plaintiff's diagnosis and her desire for treatment through the kite(s) submitted to her or in her role on the gender dysphoria committee, that would not necessarily have put her on notice that Plaintiff was at an excessive risk of harm if she did not receive treatment.

The Court recognizes that Plaintiff avers in the Amended Complaint [#8] that, as a result of not receiving treatment for gender dysphoria, she "has been suffering from depression, anxiety, suicidal thoughts, excessive weight gain, head banging, [and feeling] angry, frustrated . . . loss of motivation to do things, [loss of] hope for life, constantly agitated, . . . and worthless." *Am. Compl.* [#8] at 8. While Plaintiff alleges that she sent kites to Dr. Butler and the gender dysphoria committee requesting treatment, she does not allege that she conveyed to Dr. Butler or to the committee that she was having these symptoms, much less their severity. *See id.* at 8-9. Based on the foregoing, the Court finds that Plaintiff has not plausibly alleged that Dr. Butler consciously disregarded an excessive risk of harm to Plaintiff's health or safety.

Moreover, Plaintiff fails to allege in the Amended Complaint [#8] that Dr. Butler functioned as a gatekeeper or that she refused to fulfill such a role. *See Motion* [#29] at 7. "A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211). Plaintiff argues in her Response [#31],

however, that "Defendant Butler[,] as the head of the gender dysphoria committee[,] is the main person and gatekeeper to ALL gender dysphoria treatment[] for every single offender in every single DOC facility[.]"  *Id.* at 2.  Again, these new allegations in the Response [#31] are not properly before the Court.  *See Cnty. of Santa Fe, N.M.*, 311 F.3d at 1035; *Jojola*, 55 F.3d at 494.  Further, even if these allegations were considered, they do not plausibly give rise to an inference that Dr. Butler was or is a gatekeeper.  A medical professional is generally only considered a gatekeeper if "the medical professional knows that [her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition . . . ."  *Sealock*, 218 F.3d at 1211.  For instance, as explained in *Sealock*, in a situation where an inmate is experiencing severe chest pain, a medical professional serving as a gatekeeper may be deliberately indifferent if she knew of the chest pain and failed to call an ambulance per standard procedure.  *Id.*  Here, there are no allegations that plausibly suggest that Dr. Butler, as the head of the gender dysphoria committee, is or was a gatekeeper in a situation where Plaintiff required immediate treatment.

Defendants contend, and the Court agrees, that, at best, the allegations in the Amended Complaint [#8] amount to a disagreement by Plaintiff "with Dr. Butler's statement concerning recommendations not to place [Plaintiff] in a female facility or prescribe hormone treatment 'at this time.'"  *Motion* [#29] at 7.  "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a

constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 104-06).

Because Plaintiff's allegations in the Amended Complaint [#8] do not rise to the level from which the Court could plausibly infer that Dr. Butler was deliberately indifferent to Plaintiff's medical needs, the Court finds that Plaintiff fails to state a claim for violation of the Eighth Amendment as to Dr. Butler. Accordingly, it is recommended that the Motion [#29] be **granted** as to this issue, and that the Eighth Amendment claim be dismissed against Dr. Butler in both her individual and official capacities. *See Abu-Fakher v. Bode*, 175 F. App'x 179, 181 (10th Cir. 2006) (holding in order for an official capacity injunctive relief claim to survive, the operative complaint "must contain sufficient factual allegations to state a claim"). Further, because Plaintiff did not assert a constitutional violation, it is recommended that Dr. Butler be **granted** qualified immunity to the extent the claim is asserted against her in her individual capacity. However, Plaintiff may be able to cure the deficiencies in the Eighth Amendment claim, and the Court cannot find at this time that such a claim would be futile. Accordingly, the Court **recommends** that Plaintiff's Eighth Amendment claim against Dr. Butler be **dismissed without prejudice**. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice . . . ."); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that "[if] it is at all possible that a party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend").

2.    AR 700-14

Plaintiff also asserts that AR 700-14 violates the Eighth Amendment.  *Am. Compl.* [#8] at 8; *see also Response* [#31] at 2.[10]  The Court first notes that, to the extent Plaintiff is alleging that Defendants violated AR 700-14, the "failure to adhere to administrative regulations does not equate to a constitutional violation."  *Portier v. DeFusco*, No. 08-cv-00235-WYD-CBS, 2008 WL 5533987, at *6 (D. Colo. Nov. 26, 2008) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)).  Second, the Court agrees with Defendants that, to the extent Plaintiff's official capacity claims assert that AR 700-14 is facially inconsistent with the Eighth Amendment, "a review of the policy reveals that these [allegations] are unfounded."  *Motion* [#29] at 8.

Thus, for Plaintiff to successfully challenge the facial constitutionality of an administrative regulation, she "'must establish that no set of circumstances exist under which the [regulation] would be valid.'"  *Colo. Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1214 (10th Cir. 2006) (alteration in original) (quoting *Pub. Lands Council v. Babbitt*, 167 F.3d 1287, 1293 (10th Cir. 1999)); *see also Davidson v. Mann*, 129 F.3d 700, 701-02 (2d Cir. 1997) (quoting *U.S. v. Salerno*, 481 U.S. 739, 745 (1987)) (applying the same test to a prison regulation).  A prison regulation that allegedly impinges on an inmate's constitutional rights "is valid if it is reasonably related to legitimate penological

---

[10]  Because the Amended Complaint [#8] refers to AR 700-14 and it is central to Plaintiff's claims, it may be considered in connection with the Motion [#29] without converting it to a motion for summary judgment.  *U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)).

interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).   Under *Turner*'s reasonableness standard, a court must examine:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (citation omitted).

"Among these factors, the first is the most important; as [the Tenth Circuit] ha[s] noted, it is 'not simply a consideration to be weighed but rather an essential requirement.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007)).   "Thus, to survive a motion to dismiss, a prisoner must 'plead facts from which a plausible inference can be drawn that the [regulation] was not reasonably related to a legitimate penological interest.'" *Chrisco v. Raemisch*, No. 17-cv-01036-PAB-MEH, 2018 WL 949319, at *10 (D. Colo. Feb. 20, 2018) (quoting *Gee*, 627 F.3d at 1188).   "'This is not to say that [a prisoner-plaintiff] must identify every potential legitimate interest and plead against it.  However, [she] is required to "recite[] facts that might well be unnecessary in other contexts" to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6).'" *Id.* (quoting *Al-Owhali*, 687 F.3d at 1240).

In the Amended Complaint [#8], Plaintiff has included only one sentence directly addressing AR 700-14, in which she states that "it [is] all on external presentation with safety concerns, regardless of Plaintiff's feelings or gender identity." *See Am. Compl.* [#8]

at 8.  Plaintiff has not made any allegation that AR 700-14 is not reasonably related to a legitimate penological interest.  *See generally id.* at 8-9.  And to the contrary, the policy underlying AR 700-14 demonstrates a legitimate penological interest of the state:

> It is the policy of the Colorado Department of Corrections . . . to provide appropriate treatment services to offenders identified as meeting the criteria for a diagnosis of gender dysphoria and to maximize the protection offered to offenders under the Prison Rape Elimination Act while maintaining security and safety of staff and offenders.

*AR 700-14* [#38-1] at 1.  It is unlikely that Plaintiff would be able to plausibly allege that AR 700-14 is not reasonably related to a legitimate penological interest on leave to amend.  Therefore, to the extent Plaintiff relies on AR 700-14 to support her Eighth Amendment claim, the Court **recommends** that this portion of the Eighth Amendment claim be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 126.

## B.    Fourteenth Amendment

In order to state an equal protection claim, Plaintiff must allege facts demonstrating that she was intentionally treated differently from similarly situated inmates or former inmates.  *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).  "Equal protection of the laws doesn't guarantee equal results for all."  *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotation marks omitted).  Instead, the Equal Protection Clause "seeks to ensure that any classifications the law makes are made without respect to persons, that like cases are treated alike, that those who appear similarly situated are not treated differently without, at the very least, a rational reason for the difference."  *Id.* (internal quotation marks omitted).  Additionally, Plaintiff must allege that "the distinction

between [herself] and other inmates was not reasonably related to some legitimate penological purpose." *See Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotation marks committed).

"Different types of equal protection claims call for different forms of review." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). "A claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Id.* (citing *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109-10 (10th Cir. 2008)).

Defendants argue that "although the issues raised in the Amended Complaint concern gender and gender identity, [Plaintiff's] allegations do not assert a claim of discrimination on the basis of a suspect or quasi-suspect class[.]" *Motion* [#29] at 11. Defendants contend that Plaintiff "is not alleging that CDOC discriminates against women or transgender women as a class on the basis of sex or gender identity." *Id.* "Rather, the Amended Complaint alleges that [Plaintiff] is being singled out and treated differently from *other transgender female inmates*." *Id.* (citing *Am. Compl.* [#8] at 8) (emphasis in original). Therefore, Defendants argue, "to the extent the Amended Complaint is construed as bringing an equal protection claim, any such claim is a class-of-one claim." *Id.* at 11-12. The Court agrees.

The Supreme Court has recognized "equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from

- 19 -

others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotation marks omitted). The Tenth Circuit has held that "[t]o prevail on this theory, a plaintiff must first establish that others, 'similarly situated *in every material respect*,' were treated differently." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (emphasis added) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)).

"It is . . . imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment . . . ." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). "[T]he degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Id.* "Plaintiffs will have an easier time stating a claim where . . . the set of potentially similarly situated individuals is well-defined." *Id.* "[I]t is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable." *Jicarilla Apache Nation*, 440 F.3d at 1213. "Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases." *Id.* "[D]ismissal is proper where a party offers only conclusory allegations that others are similarly situated, without any factual support plausibly suggesting similarities 'in all material respects.'" *Shifrin v. Toll*, 483 F. App'x 446, 450 (10th Cir. 2012) (quoting *Kan. Penn Gaming*, 656 F.3d at 1220).

Defendants argue that "[t]he Amended Complaint makes no allegations suggesting

- 20 -

that [Plaintiff] is similarly situated to [other] transgender female inmates 'in all material respects.'" *Motion* [#29] at 12.   The Court agrees.   In the Amended Complaint [#8], Plaintiff states only that she "knows other transgender female offenders [who] are currently incarcerated at the Denver Women's Correctional Facility[,]" and that she has not received the same type of treatment that those other transgender women have received. *Am. Compl.* [#8] at 8.   This is merely a conclusory allegation.   Plaintiff has not alleged specific or detailed characteristics of the other transgender women incarcerated by CDOC that would make them similar to her in all material respects. *See generally id.* at 8-9.

Plaintiff "must [also] show [the] difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' . . . and 'wholly unrelated to any legitimate state activity[.]'" *Kan. Penn Gaming*, 656 F.3d at 1216 (quoting *Jicarilla Apache Nation*, 440 F.3d at 1211; *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)).   "This standard is objective – if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id.* (citing *Jicarilla Apache Nation*, 440 F.3d at 1211).

The Tenth Circuit has "approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes." *Kan. Penn Gaming*, 656 F.3d at 1216 (internal quotation marks omitted).   The Tenth Circuit addressed the risks that class-of-one claims pose to ordinary governmental decision-making, stating:

> [T]he concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors.  It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others . . . .  It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review.  This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decision[-]making: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.

*Jennings*, 383 F.3d at 1210-11,  "These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion."  *Kan. Penn Gaming*, 656 F.3d at 1216.  "If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed."  *Id.* at 1216-17.

Defendants contend, and the Court agrees, that Plaintiff makes no allegations suggesting that the difference in facility placement and treatment options offered to different transgender female inmates is "'irrational and abusive,' . . . or 'wholly unrelated to any legitimate state activity[.]'"  *See Motion* [#29] at 12 (quoting *Jennings*, 383 F.3d at 1211; *Mimics, Inc.*, 394 F.3d at 849).  In the Response [#31], however, Plaintiff asserts that "there is no rational or legitimate basis for denying" Plaintiff treatment for gender dysphoria or female facility placement and that "Defendant Butler and Defendant Williams' actions have been irrational, abused their discretion and wanton."  *Response* [#31] at 6.  These allegations are not properly before the Court because they were asserted for the first time in the Response [#31].  *See Jojola*, 55 F.3d at 494.  Moreover, these conclusory allegations, without a corresponding factual basis, are insufficient to

withstand a motion to dismiss. *See Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) (holding that the plaintiffs' conclusory allegations that the classification lacks a rational basis and was created with malicious intent were insufficient to support an equal protection claim); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) (holding that conclusory allegations, without corresponding factual basis, were insufficient to withstand a motion to dismiss).

While Plaintiff cites AR 700-14, arguing that Defendants are not treating Plaintiff as if she is transgender at all under the regulation and are withholding treatment, *Response* [#31] at 4-5, the regulation does not support Plaintiff's equal protection claim. AR 700-14 [#38-1] contains a comprehensive and systematic protocol for determining the right plan for each transgender inmate. *See generally id.* CDOC officials are afforded reasonable latitude when it comes to assessing and making decisions regarding the needs of transgender inmates. *Id.* Although this determination is made on an individualized basis, the considerations involved, particularly those relating to health, safety, and security, demonstrate legitimate penological interests of the state. This belies Plaintiff's argument that "there is no rational or legitimate basis" for the differences in treatment between different transgender inmates. *Response* [#31] at 6.

Because Plaintiff has brought a class-of-one equal protection claim, her carries a greater burden which must be satisfied by specific allegaitons. *See Jicarilla Apache Nation*, 440 F.3d at 1213. She has failed to meet that burden, as she did not sufficiently allege that she was treated differently from other transgender inmates who are similarly

situated in all material respects.  *Kan. Penn Gaming*, 656 F.3d at 1216.  Additionally, she

has failed to plausibly allege that the CDOC Defendants have acted irrationally or wholly

without regard to legitimate state activities.  *Id.*  Because Plaintiff has failed to state a

constitutional violation, the Court **recommends** that both the official and individual

capacity claims against Dr. Butler be dismissed, and that Dr. Butler be **granted** qualified

immunity as to the individual capacity claim.  The deficiencies in Plaintiff's pleadings as

to this claim are unlikely to be resolved on leave to amend.  *See Reynoldson*, 907 F.2d

at 126.  Therefore, the Court **recommends** that Plaintiff's Fourteenth Amendment claim

be **dismissed with prejudice**.  *Id.*

## C.     Defendant Williams

The Court next addresses the official capacity claim against Defendant Williams.

This claim is effectively a suit against the CDOC.  *See Thompson v. Williams*, No. 21-cv-

00602-RM-KLM, 2022 WL 462091, at *6 (D. Colo. Feb. 14, 2022), *adopted by* 2022 WL

714691 (D. Colo. Mar. 10, 2022).[11]  Thus, unlike with individual capacity claims, Plaintiff

does not need to aver that Defendants themselves committed a constitutional violation;

rather, Plaintiff must adequately allege that a constitutional violation was committed by

someone at the CDOC such that Plaintiff may be entitled to injunctive relief.  S*ee also*

*Chapman v. Fed. Bureau of Prisons*, No. 15-cv-00279-WYD-KLM, 2015 WL 7883956, at

*6 (D. Colo. Dec. 4, 2015) (holding that a claim for injunctive relief against the warden of

---

[11]  This would also appear to be true as to the claim for injunctive relief against Dr. Butler.  *See*
*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005).

the Bureau of Prisons ("BOP") in his official capacity could proceed where the plaintiff had adequately alleged that BOP employees violated his constitutional rights).

The Court found in previous sections that Plaintiff has not adequately alleged an Eighth or Fourteenth Amendment violation by Dr. Butler.  While not specifically addressed by Defendants, the Court also finds that Plaintiff has not alleged a plausible constitutional violation by any other CDOC employees, including the John/Jane Does who were previously dismissed or any other named person in the Amended Complaint [#8].  While Plaintiff alleges that the John/Jane Does did not give Plaintiff treatment for gender dysphoria, *id.* at 8, again, a mere disagreement over treatment does not state a constitutional violation. *Perkins*, 165 F.3d at 803.  Plaintiff also alleges that she has been harassed by staff and inmates based on her gender dysphoria, that her grievances did not get properly processed, and that staff lied about her and used improper gender pronouns. *Am. Compl.* [#8] at 8-11.  Plaintiff does not, however, allege how these actions rise to the level of a constitutional violation.  Accordingly, to the extent the Motion [#29] seeks dismissal of Plaintiff's claims against Defendant Williams in his official capacity, the Court **recommends** that the Motion [#29] be **granted**.[12]  However, as Plaintiff may be able to amend the complaint to cure the deficiencies, the Court **recommends** that the official capacity claim against Defendant Williams be **dismissed without prejudice**. *Gee*, 627 F.3d at 1186; *Reynoldson*, 907 F.2d at 126; *Garcia*, 2011 WL 109076, at *1.

---

[12]   It is also **recommended** that this is an additional basis for dismissal of the official capacity claim against Dr. Butler.

**D.      Prison Litigation Reform Act (PLRA)**

Finally, Defendants additionally aver that Plaintiff's claim for compensatory damages against Dr. Butler in her individual capacity fails because, under § 1997e(e) of PLRA, "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  *Motion* [#29] at 13 (citing 42 U.S.C. § 1997e(e)).  While this issue is technically moot because the Court has recommended that all of Plaintiff's claims be dismissed, the Court addresses this argument in the event Plaintiff seeks to amend the complaint.   "[A]lthough 'mental and emotional distress can constitute a compensable injury in suits for damages under . . . § 1983 based upon violations of constitutional rights, [§ 1997e(e) provides] that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'"  *Perkins*, 165 F.3d at 807 (citation omitted).  Absent a showing of physical injury, compensatory damages are barred under § 1997e(e).  *Id.* at 808 n.6.

Because a prisoner must "cite a physical injury that is separate from mental and emotional injuries . . . a prisoner cannot satisfy [§] 1997e(e) by alleging only that [she] suffered from the physical manifestations of mental or emotional injuries."  *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009); *see also Davis v. D.C.*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) ("[T]he explicit requirement of § 1997e(e) that the physical injury be 'prior[]' . . . preclude[s] reliance on the somatic manifestations of emotional distress . . . ."); *Cooksey v. Hennessey*, No. C 07-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a

plaintiff's allegations of emotional distress do not qualify as 'a prior showing of physical injury.'"); *Cannon v. Burkybile*, No. 99 C 4623, 2000 WL 1409852, at *6 (N.D. Ill. Sept. 25, 2000) ("[H]eadaches, insomnia, stress, and stomach anxiety do not sufficiently meet the physical injury requirement under . . . § 1997e(e)."); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (holding that depression and severe headaches caused by emotional distress are not a "physical injury" under PLRA).

Plaintiff argues that she "did assert physical injury for compensatory damages under the PLRA with head banging, excessive weight gain, and other physical injuries which detrimentally [affect] . . . Plaintiff's health." *Response* [#31] at 5. However, the Court agrees with Defendants that these injuries are physical manifestations of Plaintiff's alleged mental or emotional injuries under the authority cited in the previous paragraph. *See also Reply* [#38] at 6. Therefore, under § 1997e(e) of PLRA, it is **recommended** that Plaintiff be barred from claiming compensatory damages for these types of injuries. *See Perkins*, 165 F.3d at 808 n.6.

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#29] be **GRANTED**, and that all claims in this case be **DISMISSED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims under the Eighth Amendment against Dr. Butler in her individual and official capacities and the official capacity claims against Defendant Williams be **dismissed without prejudice**.

IT IS FURTHER **RECOMMENDED** that the portion of the Eighth Amendment claim based on AR 700-14 and the Fourteenth Amendment claim under the Equal Protection Clause be **dismissed with prejudice**.

IT IS FURTHER **RECOMMENDED** that as to the claims dismissed without prejudice, Plaintiff be granted leave to amend her Complaint to the extent she believes she can cure the deficiencies.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91  F.3d  1411,  1412-13  (10th  Cir.  1996).    A  party's  objections  to  this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: July 14, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

- 28 -