IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   21-cv-01695-CNS-KLM
(To be supplied by the court)

HUNTER ADAM MELNICK, Plaintiff

v.

POLIS, Governor,

DEAN WILLIAMS, Exec. Dir. Of Prisons,

DR. BUTLER, Chief of Pyschiatry,

SEE ATTACHED, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
NOV 25 2022
JEFFREY P. COLWELL
CLERK

## SECOND AMENDED PRISONER COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

A.  **PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

HUNTER ADAM MELNICK #148112
(Name, prisoner identification number, and complete mailing address)

POBOX 1010 CANON CITY, CO 81215
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
_x_ Convicted and sentenced state prisoner
____ Convicted and sentenced federal prisoner
____ Other: (*Please explain*) _____

B.  **DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Polis, Governor
(Name, job title, and complete mailing address)

Governor      1300 Broadway 10th Floor Denver, CO 80203

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _x_ Yes ___ No (*check one*). Briefly explain:

CEO of State

Defendant 1 is being sued in his/her _x_ individual and/or _x_ official capacity.

2

Defendant 2:     DEAN WILLIAMS Exec. Dir. Of Prisons
        (Name, job title, and complete mailing address)

    CEO of CDOC    1300 Broadway 10th Floor Denver, CO 80203

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __x__ Yes ___ No (*check one*). Briefly explain:

Defendant 2 is being sued in his/her _x_ individual and/or _x_ official capacity.

Defendant 3:    Dr. Butler Chief of Psychiatry
       (Name, job title, and complete mailing address)

        1300 Broadway 10th Floor Denver, CO 80203

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __x__ Yes ___ No (*check one*). Briefly explain:

Defendant 3 is being sued in his/her _x_ individual and/or _x_ official capacity.

## C. JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

__x__ 42 U.S.C. § 1983 (state, county, and municipal defendants)

____ *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

____ Other: (*please identify*) _____

## D. STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: ___SEE ATTACHED___

Supporting facts:
SEE ATTACHED

Plaintiff references exhibits and attachments in the original and first amended complaint, as they are central to the plaintiff's claims

E.  PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes _x_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): _____

Docket number and court: _____

Claims raised: _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?) _____

Reasons for dismissal, if dismissed: _____

Result on appeal, if appealed: _____

F.  ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

 _x_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

 _x_ Yes ___ No (*check one*)

## G. REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Declarative Relief stating that the Defendant's violated Plaintiff's civil rights
To be treated as any other female in the custody of DOC, whether in constructive or physical custody of the DOC. And to also be given therapy, and actual medical treatment for gender dysphoria, and to stop the harassment from DOC personnel, with a permanent injunction against the Defendants in their official capacities enforcing this relief.
Nominal, Monetary, Punitive damages against Defendants in their individual capacities, of $350,000 per Defendant

## H. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

11-22-22
_____
(Date)

(Form Revised December 2017)

B. DEFENDANTS INFORMATION

DEFENDANT 4
TERESA MITCHELL
ACTING UNDER COLOR OF STATE LAW
Community Parole Officer
1300 Broadway 10th Floor Denver, CO 80203

DEFENDANT 5
JANE DOE
ACTING UNDER COLOR OF STATE LAW
Case Manager
1300 Broadway 10th Floor Denver, CO 80203

DEFENDANT 6-10 JANE / JOHN DOES
ACTING UNDER COLOR OF STATE LAW
Medical Professionals
1300 Broadway 10th Floor Denver, CO 80203

D. Statement of Claims

Violation of CADA C.R.S. 24-34-306
Violation of Americans with Disabilities Act (the "ADA"), 42 U.S.C. 12181, et seq.
Violation of US 8th amendment to be free from cruel and unusual punishment
Violation of US 14th amendment Equal Protection
Violation of US 14th amendment be free from sex based discrimination
Failure to Train Claim
AR 700-14 is unconstitutional on its face and as applied to Plaintiff

Dr. Michelle Klaus officially diagnosed Plaintiff in 2020 with Gender Dysphoria disorder and prescribed the Plaintiff Androgen blocking medication, which blocks the effects of testosterone. Gender Dysphoria is different from Gender Identity Disorder, where Dysphoria as a part of its clinical definition means that there is extreme distress, suffering and anguish associated with the diagnose. Gender Dysphoria Committee will be abbreviated as GDC for brevity in the rest of this document.

Plaintiff even filed an ADA accommodation request under DOC Administrative Regulation 750-04 requesting female facility placement for gender dysphoria and was told that in the response it was a "medical" issue and request denied.

Plaintiff went through DRDCs intake process and met with Nurse Practitioners, Physician Assistants, facility staff including Jane Doe Captain, and a psychiatrist. During these many separate screenings Plaintiff requested each time to be treated for gender dysphoria with being placed in a female facility, with surgery and with hormones. Plaintiff was told each time that the decision was not up to them and that the Plaintiff needed to kite the GDC and only they were able to authorize any sort of treatment for gender dysphoria. Plaintiff when specifically asking a medical provider (Plaintiff believes it was a Doctor) during the course of this intake process was told that as a provider he was not even allowed to prescribe hormones and only the GDC would make that decision and prescribe even if the Plaintiff had proof of a prior or current prescription of the hormones. Plaintiff asked this provider who was in charge of the GDC and was told it was Doctor Butler and that Plaintiff needed to kite her. The provider stated that if there was no authorization by the GDC then there was no way to receive any form of treatment and that his hands were tied, and that it was way above his pay grade. Plaintiff in person requested again and again, some form of treatment for gender dysphoria and to be treated fairly, kept being shot down and denied by the staff listed above. That was incredibly frustrating and discouraging. Plaintiff feels like life is a lie, because of having to conform to male standards in fear of more harassment and retaliation from male prisoners.

It took the Plaintiff multiple attempts to find out who the ultimate person in charge of the GDC was. First it was kite mental health, then psychiatry, then the GDC, then the head of the GDC was the Head of Psychiatry, then the Head of both was Dr. Butler. So the Plaintiff diligently put in a kite each time that the new information was discovered. Plaintiff discovered this after many discussions with various staff members, it was not easy or apparent on who was in charge.

While these intake processes took several days the Plaintiff sent off many kites requesting

8

treatment for gender dysphoria and outlining the extreme distress being suffered by the Plaintiff due to current housing situation in a male facility and gender dysphoria. Plaintiff sent off kites to the Housing "Lieutenant", the Housing "Captain", the "Intake Captain", the Housing "Sergeant", the "Programming Captain", the "Programmer", "Mental Health", "Case Manager", "Case Manager 3", "Dr. Butler", "Gender Dysphoria Committee", "Psychiatry", "Chief of Psychiatry" Plaintiff has been suffering from depression, anxiety, suicidal thoughts, excessive weight gain, head banging, self-mutilation, angry, frustrated, weight gain, loss of motivation to do things, losing hope for life, constantly agitated, hopeless, and worthless since there has been no treatment for Plaintiff's gender dysphoria and explained this in the kites sent off to the staff listed above. Plaintiff was being constantly pushed aside and dismissed by staff, because staff knows that DRDC is a temporary holding facility and that dealing with any one individual would be a temporary inconvenience. And that is partially how the Plaintiff felt was as an inconvenience to staff and wasn't important enough to receive any sort of treatment for gender dysphoria.

Plaintiff requested in a separate flurry of kites to "Case Manager" grievances to start the grievance process. Plaintiff spoke to COs on duty multiple times to request to speak in person to the above mentioned kited individuals and was told to keep putting in kites and someone would come talk to you.
Plaintiff did receive a written typed up response approximately 2 weeks later from Dr. Butler stating that the Plaintiff would not receive any hormones and would be placed in a male facility. Dr. Butler was the only person to respond to any of the submitted kites in writing. Aside from grievance responses that is.
Dr. Butler did respond in grievance responses for the GDC reiterating that the "Plaintiff would not receive any hormones and would be placed in a male facility".
DRDC is considered a transition facility and not considered fully male placement. As transgender offenders will go there before they fully transition to going to the Denver Womens Correctional Facility.
Dr. Butler as the Chief of Psychiatry for DOC and as Head of the GDC would have intimate knowledge of the risks associated with Gender Dysphoria and the available treatments. Furthermore, with the ruling in Hardeman v. Smith, 764 Fed. Appx. 658, 663-664, 2019 U.S. App citing Lamb v Norwood Dr. Butler was put on notice that there are 4 currently accepted treatments for Gender Dysphoria in this circuit and failure to provide one of these 4 treatments for a diagnosed medical condition of gender dysphoria (which the Plaintiff had been medically diagnosed by a Doctor) would result in deliberately choosing to harm the Plaintiff because of the known risks in failing to treat gender dysphoria as outlined in Williams v. Kincaid, 45 F.4th 759, 768, 2022 U.S. App.

Plaintiff researched the DOC Administrative Regulation 700-14 and saw that it was all on external presentation with safety concerns, regardless of Plaintiff's feelings or gender identity or gender dysphoria. Plaintiff then grieved (attempted to) the actions of the GDC but was responded that it was a "classification decision" and that it was un-grievable per AR 850-04. Plaintiff attempted to also grieve the conduct of the GDC and not Plaintiff's current placement but this was denied.

Plaintiff shouldn't have to suffer from harassment that wouldn't be occurring if Plaintiff was placed with other females, and that is exactly what is happening with other transgender

9

individuals who have been moved from male placement to female placement. GDC does do this, they just don't want to do it in Plaintiff's case. Plaintiff gets treated in a negative way by staff because of Plaintiff's gender dysphoria.

Defendant Williams policies including AR 700-14 have resulted in the discrimination of the Plaintiff based on Plaintiffs sex violating Plaintiffs civil rights. Plaintiff maintains that Defendant Williams failed to train staff on how to appropriate enforce and implement AR 700-14, which resulted in atypical hardship and suffering as outlined in this complaint and that the Plaintiff's ADA claim being tossed aside by DOCs office of legal services which reports directly to Defendant Williams. And as the Executive Director is the one who promulgates all DOC policy.

Plaintiff knows that other offenders receive hormones, gender conforming surgery, female facility placement, and psychotherapy while incarcerated in Colorado Department of Corrections and these other offenders are in the identical situation as the Plaintiff. Plaintiff knows other transgender female offenders that are currently incarcerated at the Denver Women's Correctional Facility. Plaintiff has not received ANY form of treatment, even after repeatedly asking for it. All other offenders have received at least some form of treatment. AR 700-14 mandates that Plaintiff receive some form of treatment. Defendant Butler has been deliberately indifferent based on her not providing the Plaintiff with ANY treatment for gender dysphoria after knowing based on her positions the negative effects of not giving some form of treatment to someone with gender dysphoria. Defendant Williams' policies and lack of training employees has resulted in damage to the Plaintiff.

Plaintiff has a fundamental right to be free from sex based discrimination, to be treated equally to other females, to be treated with medical treatment for gender dysphoria disorder and to be free from cruel and unusual punishment that is atypical of normal prison conditions. Plaintiff states again that Defendant Butler's actions, and in some cases lack of action are having a significant negative impact on Plaintiff's life as outlined throughout this complaint.

Plaintiff submitted numerous grievances attempting to address these issues, grievances "disappeared" and were not submitted. Plaintiff has been through the grievance process on many of these actions in this complaint, there were many more that were "lost in the system". It got so bad that the Plaintiff started mailing grievances to DOC Office of Legal Services, and mailing letters telling what was going on to the level 3 grievance coordinator at DOC Headquarters. Plaintiff kept speaking to case manager Willard at the time and he kept telling me that it was in his boss's hands JANE DOE 5.

JANE DOE 5 had stated to the Plaintiff that the grievances were being taken care of appropriately and getting processed properly. Plaintiff kept catching JANE DOE 5 in lies about whether grievances were being "chroned" properly in the DOC chronological entry system, and what were the status of grievances filed, including requesting grievance numbers so Plaintiff could follow up. Plaintiff was repeatedly dismissed by JANDE DOE 5 and given the run around to prevent the Plaintiff from filing grievances against staff. CM Willard stated that she was his boss and that his hands were tied and that all you can do is keep trying.

Female officers employed by DOC have an exceptionally bad attitude towards transgender

10

offenders, including CPO Teresa Mitchell which shows up in the Plaintiffs parole hearing audio in September 2020. Mitchell and other female staff routinely participate in transgender bashing and malicious comments resulting in discrimination.

Plaintiff gets harassed by staff and inmates. Sometimes its intentional misuse of gender pronouns, talking badly about all of the "trannys", or other sexual innuendo. Filing a PREA complaint in DOC gets you nowhere except with more staff harassing you. Plaintiff has seen this happen multiple times with others that have filed PREA complaints and does not feel like being targeted even more based on "telling on the officers" or "ratting on other inmates". Plaintiff feels victimized and pissed off again just recounting and thinking of some of the details. Plaintiff having to live a lie because Defendants refusal to treat Plaintiff's gender dysphoria results in an atypical and unusual hardship in excess of normal prison conditions. Defendant Butler's deliberate indifference to Plaintiff's serious medical need for treatment for gender dysphoria is affecting every aspect of Plaintiff's life.

Plaintiff's chronological entries, medical records, mental health records, and even Parole hearing audio of Plaintiff's CPO, shows DOC's attitude to Plaintiff as a transgender offender. It should be noted that since the filing of the original complaint Plaintiff has filed two PREA complaints against staff at FCF and the results of those investigations was that Plaintiff didn't have enough evidence.

> Reflecting this shift in medical understanding, we and other courts have thus explained that a diagnosis of gender dysphoria, unlike that of "gender identity disorder[]," concerns itself primarily with distress and other disabling symptoms, rather than simply being transgender. In Grimm, we further explained that "left untreated, gender dysphoria can cause, among other things, depression, substance use, self-mutilation, other self-harm, and suicide." 972 F.3d at 595. Similarly, the Ninth Circuit has pointed out that "[f]ailure to follow an appropriate treatment plan [for gender dysphoria] can expose transgender individuals to a serious risk of psychological and physical harm." Edmo v. Corizon, Inc., 935 F.3d 757, 771 (9th Cir. 2019).
> Williams v. Kincaid, 45 F.4th 759, 768, 2022 U.S. App. LEXIS 22728, *13-14 (4th Cir. Va. August 16, 2022)

The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373-374, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547, 565-566, 1976

> "In Lamb, this court identified four currently available treatments for gender dysphoria: (1) changes in gender expression and role; (2) hormone therapy to make the body feminine or masculine; (3) surgery to change primary or secondary sex characteristics; and (4) psychotherapy. Id. Here, a reasonable jury could conclude the in-cell meetings referenced above do not rise to the level of "psychotherapy," and the record contains no evidence of the other three possible treatments. If there is at least a genuine issue as to whether Hardeman has even received any of the four currently available treatments, she cannot simply be "asserting a difference of opinion" as to "the kind and quality of medical treatment.""

Hardeman v. Smith, 764 Fed. Appx. 658, 663-664, 2019 U.S. App. LEXIS 5163, *12, 2019 WL 856585 (10th Cir. Okla. February 22, 2019)

Our approach today "acknowledges that courts typically lack sufficient expertise in physiology, etiology, psychiatry, and other potentially relevant disciplines to determine the cause or causes of gender dysphoria." Pa. Dep't of Corr., 2021 U.S. Dist. LEXIS 31970, 2021 WL 1583556, at *9. Williams v. Kincaid, 45 F.4th 759, 772, 2022 U.S. App. LEXIS 22728, *21-22 (4th Cir. Va. August 16, 2022)

"These courts and the BOP recognize the [WPATH Standards of Care] as authority on medical treatment of gender dysphoria yet this institution refuses or fails to provide treatment consistent with those standards in violation of the Eighth Amendment[']s prohibition against cruel and unusual punishment" (docs. 1-4 at 4, 6, 8; 33 at 3, 9-10).
Boone v. Carvajal, 2022 U.S. Dist. LEXIS 159351, *24-25, 2022 WL 4001154 (D.S.C. June 28, 2022)

In light of the "basic promise of equality . . . that animates the ADA," we see no legitimate reason why Congress would intend to exclude from the ADA's protections transgender people who suffer from gender dysphoria. Nat'l Fed. of the Blind, 813 F.3d at 510

The United States Supreme Court ruling in Bostock v. Clayton Cty is binding precedent, that not only is being a female a suspect class, but that a transgender person can be discriminated against based on their "sex". And that it is a "sex" based discrimination claim.

> "Finally, despite the important differences between the Fourteenth Amendment and Title VII, the Court's decision may exert a gravitational pull in constitutional cases. Under our precedents, the Equal Protection Clause prohibits sex-based discrimination unless a "heightened" standard of review is met. Sessions v. Morales-Santana, 582 U. S. ___, ___, 137 S. Ct. 1678, 198 L. Ed. 2d 150 (2017) (slip op., at 8); United States v. Virginia, 518 U. S. 515, 532-534, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996). By equating discrimination because of sexual orientation or gender identity with discrimination because of sex, the Court's [**281] decision will be cited as a ground for subjecting all three forms of discrimination to the same exacting standard of review.
>
> Under this logic, today's decision may have effects that extend well beyond the domain of federal antidiscrimination statutes. This potential is illustrated by pending and recent lower court cases in which transgender individuals have challenged a variety of federal, state, and local laws and policies on constitutional grounds."
> See, e.g., Complaint in Hecox, No. 1: 20-CV-00184 (state law prohibiting transgender students from competing in school sports in accordance with their gender [***125] identity); Second Amended Complaint in Karnoski v. Trump, No. 2:17-cv-01297 (WD Wash., July 31, 2019) (military's ban on transgender members); Kadel v. Folwell, ___ F. Supp. 3d ___, ___-___, 2020 U.S. Dist. LEXIS 42586, 2020 WL 1169271, *10-*11 (MDNC, Mar. 11, 2020) (state health plan's exclusion of coverage for sex reassignment procedures); Complaint in Gore v. Lee, No. 3:19-cv-00328 (MD Tenn., Mar. 3, 2020)

(change of gender on birth certificates); Brief for Appellee in Grimm v. Gloucester Cty. School Bd., No. 19-1952 (CA4, Nov. 18, 2019) (transgender student forced to use gender neutral bathrooms at school); Complaint in Corbitt v. Taylor, No. 2:18-cv-00091 (MD Ala., July 25, 2018) (change of gender on driver's licenses); Whitaker, 858 F. 3d, at 1054 (school policy requiring students to use the bathroom that corresponds to the sex on birth certificate); Keohane v. Florida Dept. of Corrections Secretary, 952 F. 3d 1257, 1262-1265 (CA11 2020) (transgender prisoner denied hormone therapy and ability to dress and groom as a female); Edmo v. Corizon, Inc., 935 F. 3d 757, 767 (CA9 2019) (transgender prisoner requested sex reassignment surgery); cf. Glenn v. Brumby, 663 F. 3d 1312, 1320 (CA11 2011) (transgender individual fired for gender non-conformity).

Bostock v. Clayton Cty., 140 S. Ct. 1731, 1783, 207 L. Ed. 2d 218, 280-281, 2020 U.S. LEXIS 3252, *124-125, 104 Empl. Prac. Dec. (CCH) P46,540, 28 Fla. L. Weekly Fed. S 294 (U.S. June 15, 2020)

But "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in usual ways, including inference from circumstantial evidence." Gonzales v. Martinez, 403 F.3d 1179, 1183 (10th Cir. 2005) (quoting Farmer, 511 U.S. at 842).

Although not dispositive, an official's training may undermine his or her claim that he or she was unaware of such a risk. See Mata, 427 F.3d at 757 ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm."). In any event, "the factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.
Walton v. Gomez (In re Estate of Booker), 745 F.3d 405, 430, 2014 U.S. App. LEXIS 4493, *63-65, 2014 WL 929157 (10th Cir. Colo. March 11, 2014)
(allegations that medical treatment was denied for non-medical reasons were sufficiently allege deliberate indifference); cf. Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266-67 (11th Cir. 2020) ("[R]esponding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference.'")
Mohamed v. Jones, 2022 U.S. Dist. LEXIS 30991, *75, 2022 WL 523440 (D. Colo. February 22, 2022)

Invocation of Prison Mail Box Rule
I, Hunter Adam Melnick, swear under penalty of perjury 28 USCS 1746 that the Plaintiff placed a copy of this second amended complaint in the prison legal mail system invoking the prison mailbox rule for an effective filing date of 11-22-22 with first class postage prepaid sent via USPS on 11-22-22
See Price v. Philpot, 420 F.3d 1158, 1165 (10th Cir. 2005) citing Licerio v. Lamb, 2022 U.S. App. LEXIS 25188, *4, 2022 WL 4100400 (10th Cir. Colo. September 8, 2022)

Hunter Adam Melnick  *(signature)*                    Executed on 11-22-22

Hunter Melnick #148112
CTCF
PO Box 1010
Cañon City, CO 81215

US District Court
901-19th St. Rm A105
Denver, CO 80294

CTCF 11-22-22
DATE REC'D

Nishimoto 22057 JW
DOC EMPLOYEE LAST NAME

148112 Melnick (HM)
DOC#        OFFENDER LAST NAME

148112 Melnick