**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01695-CNS-SBP

HUNTER ADAM MELNICK,

      Plaintiff,

v.

POLIS, Governor,
DEAN WILLIAMS, Exec. Dir. Of Prisons,
DR. BUTLER, Chief of Psychiatry,
THERESA MITCHELL,
JANE DOES, and
JANE/JOHN DOES,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on **CDOC Defendants' Partial Motion to Dismiss**

**Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

("Motion to Dismiss" or "Motion"), ECF No. 105, filed by Defendants Dean Williams, Dr. Sarah

Butler, and Theresa Mitchell. Plaintiff filed a response in opposition to the Motion, ECF No. 122

("Resp."), and Defendants filed a reply, ECF No. 126 ("Reply"). The Motion has been referred

to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of

Civil Procedure 72(b). *See* ECF Nos. 15, 106. With respect to the claims against Governor Polis

and the John and Jane Does, this case is also before the Court pursuant to 28 U.S.C. § 1915(e)

because Plaintiff is proceeding in forma pauperis ("IFP"). ECF No. 6. The court has reviewed the

briefing, the entire case file, and the applicable law. For the reasons that follow, the court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART** and further **RECOMMENDS** that the claims against Governor Polis and the John/Jane Does be **DISMISSED**.

## BACKGROUND

At the time of the events at issue in this case, Plaintiff was incarcerated in the Colorado Department of Corrections ("CDOC").[1] Because Plaintiff is a prisoner, United States Magistrate Judge Gordon P. Gallagher reviewed the original complaint under 28 U.S.C. § 1915A. Among other things, Judge Gordon recommended dismissing Plaintiff's claim against Governor Polis without prejudice for lack of personal participation. ECF No. 11 at 5-6. United States District Judge Charlotte N. Sweeney adopted that recommendation and also found Plaintiff's claims that were pleaded pseudonymously against John and Jane Does likewise should be dismissed without prejudice for failure to show entitlement to relief. ECF No. 14.

The pending Motion is the second motion to dismiss that has been filed in the matter. On September 29, 2022, Judge Sweeney adopted the recommendation of United States Magistrate Judge Kristen L. Mix to grant Defendants' motion to dismiss the prior version of Plaintiff's complaint (ECF No. 8). *See* ECF No. 80 ("MTD Order"). For context, this court begins with

---

[1] Plaintiff's current custody status is unclear. The CDOC Offender Search website indicates that Plaintiff has been released from custody. *See* [CDOC Offender Search (state.co.us)](CDOC Offender Search (state.co.us)) (Plaintiff's "current facility assignment" listed as "parole-southeast region"), last visited August 31, 2023. To that end, concurrently with the issuance of this recommendation, this court is directing Plaintiff to submit a status report verifying whether he is out of custody on parole or currently incarcerated in a CDOC facility.

Judge Sweeney's ruling, which bears on the recommended disposition of the current Motion to Dismiss.

Plaintiff, who has been diagnosed with gender dysphoria disorder,[2] alleged that Dr. Butler, the Chief of Psychiatry and head of the CDOC gender dysphoria committee, was deliberately indifferent to Plaintiff's serious medical needs. The court dismissed that Eighth Amendment claim without prejudice, *id.* at 5 n.1, and Plaintiff has re-raised that claim in the Second Amended Complaint, ECF No. 98 ("SAC"), the operative complaint and the subject of the pending Motion to Dismiss. Dr. Butler has not moved to dismiss that claim.[3]

Judge Sweeney also dismissed an Eighth Amendment claim challenging a CDOC Administrative Regulation ("AR"), which concerns the management of transgender inmates. *See* ECF No. 38-1, *Management of Offenders with Gender Dysphoria*, AR 700-14 (September 1, 2019).[4] The court dismissed the claim attacking AR 700-14 with prejudice, finding that Plaintiff had failed to "plead facts from which a plausible inference can be drawn that [the] regulation was not reasonably related to a legitimate penological interest." MTD Order at 6 (quoting *Gee v.*

---

[2] Plaintiff alleges that "Gender Dysphoria is different from Gender Identity Disorder, where Dysphoria as a part of its clinical definition means that there is extreme distress, suffering and anguish associated with the diagnos[is]." ECF No. 98 at 8.

[3] Defendants seek dismissal of all but the Eighth Amendment claim against Dr. Butler. *See* Motion at 5.

[4] The current version of AR 700-14, with an effective date of April 1, 2022, is available at 0700_14_04012022.pdf - Google Drive, last visited August 29, 2023. This court may take judicial notice of state agency rules and regulations without converting a 12(b)(6) motion to dismiss into a motion for summary judgment. *Pace v. Swerdlow*, 519 F. 3d 1067, 1072-73 (10th Cir. 2008); *Ray v. Aztec Well Serv. Co.*, 748 F. 2d 888, 889 (10th Cir. 1984) (citing *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 742 n.4 (1976)). For purposes of Plaintiff's claim, there appears to be no substantive difference between the two versions of the regulations.

*Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010)). The court also dismissed with prejudice a Fourteenth Amendment "class of one" equal protection claim, which hinged on the allegation that Plaintiff "is being singled out and treated differently from other transgender female inmates." *Id.* at 7 (finding that "[b]ecause Plaintiff did not allege specific or detailed characteristics of the other transgender women that would make them similar to her, Plaintiff's assertion amounts to a conclusory allegation").

The court dismissed an injunctive relief claim against Mr. Williams without prejudice because it failed to allege an underlying constitutional violation by a CDOC employee. *Id.* at 8. And the court found that, because Plaintiff had made no showing of a physical injury, Plaintiff had alleged no claim demonstrating an entitlement to compensatory damages. *Id.* (discussing 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of injury.")). Judge Sweeney gave Plaintiff permission to file a Second Amended Complaint within sixty days of the Order, but only as to the "claims *dismissed without prejudice*[.]" *Id.* at 9 (emphasis added).

On November 25, 2022, Plaintiff filed a Second Amended Complaint, re-raising claims against Dr. Butler and Mr. Williams and bringing in a new Defendant, Community Parole Officer Teresa Mitchell. Plaintiff sues Mr. Williams and Ms. Mitchell in their individual and official capacities. SAC at 3, 6.

Plaintiff's factual allegations against Mr. Williams are extremely limited. He asserts that Mr. Williams, "as the Executive Director [of CDOC][5] is the one who promulgates all DOC

---

[5] The court takes judicial notice of the fact that Mr. Williams no longer holds the position of Executive Director of CDOC. *See, e.g.*, *Lerner v. Stancil,* No. 22-cv-00888-NYW-NRN, 2023

policy," and that his "policies including AR 700-14 have resulted in the discrimination of Plaintiff." *Id.* Mr. Williams allegedly "failed to train staff on how to appropriate [sic] enforce and implement AR 700-14," which allegedly caused Plaintiff "atypical hardship and suffering." *Id.* Sparse, too, are the allegations concerning Ms. Mitchell. In their entirety, they assert that she has "an exceptionally bad attitude towards transgender offenders, . . . which shows up in the Plaintiffs [sic] parole hearing audio in September 2020," and that she "routinely participate[s] in transgender bashing and malicious comments resulting in discrimination." *Id.* at 10-11.

In the Second Amended Complaint, Plaintiff includes a laundry list of claims: a claim under the Colorado Anti-Discrimination Act ("CADA"); (2) a claim under the Americans With Disabilities Act ("ADA"); claims alleging violations of "US 8th amendment to be free from cruel and unusual punishment," "US 14th amendment Equal Protection," and "US 14th amendment be free from sex based discrimination," which the court construes as claims raised under 42 U.S.C. § 1983; a claim styled as "failure to train;" and a claim challenging the constitutionality AR 700-14, the CDOC administrative regulation that was the subject of the claim Judge Sweeney dismissed with prejudice. *Id.* at 8. Plaintiff does not specify which Defendants are being sued on which claim, leaving Defendants—and this court—to sort out that matter. As relief, Plaintiff seeks declaratory and injunctive relief against Defendants in their official capacities, and "[n]ominal, [m]onetary, [and p]unitive damages against Defendants in their individual capacities, of $350,000 per Defendant." *Id.* at 6.

In the current Motion to Dismiss, Defendants contend that Plaintiff's claims must be

WL 3595998, at *11 n.1 (D. Colo. May 23, 2023) (noting that Moses Andre Stancil is the Acting Executive Director of CDOC).

dismissed for multiple reasons. They argue that the claims previously dismissed with prejudice by Judge Sweeney cannot be reasserted here; that this court lacks subject matter jurisdiction over any CADA claim; that Plaintiff has failed to plead a plausible claim for relief under the ADA or under the Eighth and Fourteenth Amendments; and that Plaintiff has again failed to plead that he sustained a physical injury resulting from Defendants' alleged conduct, thus barring him from recovering compensatory damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). *See* Motion at 4-5. Mr. Williams and Ms. Mitchell argue that they are entitled to qualified immunity as to any claims brought against them in their individual capacities. *Id.* at 5.

## STANDARDS OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). That is, the complaint must include well-pleaded

facts that, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 679. It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In this analysis, courts "disregard conclusory statements and look only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Additionally, "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (internal citation omitted). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.    Legal Standard for Review of IFP Claims Under 28 U.S.C. § 1915(e)

When a plaintiff proceeds IFP, the court "shall dismiss the case at any time if the court determines that . . .  the action . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). "We apply the same standard of review for dismissals under [this statute] that we employ for Federal Rule of Civil Procedure 12(b)(6) motions." *Kay v. Bemis,* 500 F.3d 1214, 1217 (10th Cir. 2007).

### III.    Legal Standard for Pleadings of Pro Se Litigants

Plaintiff is proceeding pro se. The court, therefore, "review[s] [Plaintiff's] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This rule applies to all proceedings involving pro se litigants. *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (citations omitted).

However, Plaintiff's pro se status does not vitiate the obligation to adhere to, and comply with, "the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (stating that a pro se litigant must "comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"). Thus, while the court makes "some allowances" for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with the pleading requirements," the court "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110); *see also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (cautioning that the court may not "construct arguments or theories for the [pro se] plaintiff in the absence of any discussion of those issues") (citation omitted).

## ANALYSIS

### I.    The AR 700-14 Claim and Equal Protection Claim Previously Dismissed With Prejudice

Judge Sweeney dismissed two claims with prejudice: an Eighth Amendment claim

challenging AR 700-14 and a Fourteenth Amendment Equal Protection Claim. MTD Order at 6-7. Despite that clear ruling, Plaintiff brings claims in the Second Amended Complaint asserting a "Violation of US 14th Amendment Equal Protection" and that "AR 700-14 is unconstitutional on its face and as applied to Plaintiff." SAC at 8.

As for the equal protection claim, which the court assumes Plaintiff may be raising against Dr. Butler, the court discerns no difference between the previous iteration of that claim, based on the contention that Plaintiff alone "has not received the same treatment that the other transgender women have received," MTD Order at 7, and the claim in its current form, premised on the allegation that Plaintiff is the only inmate denied treatment for gender dysphoria disorder. SAC at 10 ("Plaintiff knows that other offenders receive hormones, gender conforming surgery, female facility placement, and psychotherapy," but only Plaintiff "has not received ANY form of treatment[.]") (emphasis in original). However, Plaintiff cannot reraise this claim, which was dismissed with prejudice.

A "dismissal with prejudice means the plaintiff cannot return to federal court with the same claims." *Charles v. Hackford*, No. 18-4024, 2018 WL 4006938, at *1 (10th Cir. Apr. 5, 2018) (unpublished) (citing *Styskal v. Weld Cnty. Bd. of Cnty. Comm'rs*, 365 F.3d 855, 859 (10th Cir. 2004)). Furthermore, "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Winkel v. Hammond*, 601 F. App'x 754, 754–55 (10th Cir. 2015) (quoting *McWilliams v. State of Colo.*, 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and brackets omitted)); *see also Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (dismissing as frivolous a complaint that "substantially mirrors" a prior complaint that was dismissed), *overruled in part on other grounds in Coleman v. Tollefson,* 575

U.S. 532, 534 (2015). The court therefore **recommends** that Plaintiff again be **prohibited from pursuing the previously dismissed equal protection claim against any Defendant, and that the court order that no Defendant can be held liable to Plaintiff on this defunct claim.**

Similarly, the court finds that Plaintiff has improperly reraised a claim attacking the constitutionality of AR 700-14, the regulation which addresses the management of CDOC prisoners with gender dysphoria, which Judge Sweeney also dismissed with prejudice. Compare the First Amended Complaint, in which Plaintiff alleged that the regulation "[is] all on external presentation with safety concerns, regardless of Plaintiff's feelings or gender identity," ECF No. 8 at 8, with the Second Amended Complaint, in which Plaintiff asserts that the regulation "was all on external presentation with safety concerns, regardless of Plaintiff's feelings or gender identify or gender dysphoria." SAC at 9. This is the heart of the matter: Plaintiff believes the regulation is unconstitutional because it does not adequately take into account Plaintiff's "feelings or gender identity." The court perceives no difference in the two iterations of this claim, which Plaintiff describes in identical terms in both complaints.

Judge Sweeney rejected Plaintiff's first challenge to the constitutionality of the regulation: "The Court finds that AR 700-14 demonstrates a legitimate penological interest of the state to maximize protection and Plaintiff fails to assert that the policy is not reasonably related to a legitimate penological interest." MTD order at 1. That pleading omission continues to mark the substantively duplicative version of the claim in the Second Amended Complaint. The court therefore **RECOMMENDS** that Plaintiff again be **prohibited from pursuing any claim challenging the constitutionality of AR 700-14, against any Defendant, and that the court order that no Defendant can be held liable to Plaintiff on this defunct claim.**

**II.     The Section 1983 Claims Against Mr. Williams and Ms. Mitchell**

The court now turns to the claims against Mr. Williams and Ms. Mitchell, whom Plaintiff sues in both their individual and official capacities, and concludes that Plaintiff has failed to plead any plausible claim for relief under Section 1983 against these Defendants.

**A.     Individual Capacity Claims**

Mr. Williams and Ms. Mitchell have asserted qualified immunity. Motion to Dismiss at 14-15. Plaintiff does not respond to the argument that these officials are shielded from liability by qualified immunity. *See generally* Resp. (no mention of qualified immunity).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is "an immunity *from suit*, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (emphasis added); *see also Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability.").

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017)

(quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

When a defendant asserts qualified immunity, the plaintiff must show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the defendant's challenged conduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation omitted). Courts may address either qualified immunity prong first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). "The record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

An official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (emphasis added). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). And the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

While a plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 16 (quotation omitted). It is the plaintiff's obligation to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

### 1. Mr. Williams

The claim against Mr. Williams hinges on a theory of supervisory liability. Plaintiff contends Mr. Williams, as Executive Director of CDOC, "promulgates all DOC policy;" that CDOC policies (particularly AR 700-14) have resulted in "discrimination" against Plaintiff; and that these "policies and lack of training employees have resulted in damage to the Plaintiff." SAC at 10. According these allegations a liberal construction, the court construes them as attempting to plead that Mr. Williams is liable to Plaintiff for creating conditions of confinement that violate the Eighth Amendment.

***Constitutional violation.*** To overcome Mr. Williams' assertion of qualified immunity, Plaintiff must satisfy the burden on both qualified immunity prongs. *Cummings*, 913 F.3d at 1239. The court first evaluates whether Plaintiff has plausibly alleged that Mr. Williams violated the Constitution. Motion to Dismiss at 10-11.

To begin, the Supreme Court has described the term "supervisory liability" as "a misnomer," inasmuch as it may imply respondeat superior (or purely vicarious) liability. *Iqbal*, 556 U.S. at 677. Rather, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added). Put another way, to plausibly state a Section 1983 claim against a supervisor, a plaintiff must allege facts plausibly demonstrating that "the official's subordinates violated the Constitution [and] the official *by virtue of his own conduct and state of mind* did so as well." *A.A. ex rel. Archuletta v. Martinez*, No. 12-cv-00732-WYD-KMT, 2012 WL 5869158, at *11 (D. Colo. Nov. 19, 2012) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010)) (emphasis in original).

Because mere supervisory status "is insufficient to hold a defendant liable," *Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023), a plaintiff's pleading "must show an 'affirmative link' between the supervisor and the constitutional violation." *See Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195). This "affirmative link" requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct," *id.* (quoting *Iqbal*, 556 U.S. at 677), but may be shown by "the [officer's] 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). To plead a plausible claim for supervisory liability under Section 1983, Plaintiff must allege: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199-2000 (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)); *accord Schneider*, 717 F.3d at 767.

An Eighth Amendment conditions-of-confinement claim rests on two elements. "First, the alleged conditions must be sufficiently serious—that is, they must 'deprive an inmate of the

minimal civilized measure of life's necessities' or 'subject an inmate to a substantial risk of serious harm.'" *Thompson v. Lengerich*, No. 22-1128, 2023 WL 2028961, at *3 (10th Cir. Feb. 16, 2023) (quoting *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1173 (10th Cir. 2021)) (internal quotation marks omitted). Second, the allegations must plausibly establish that the prison official acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official will not be liable unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference*." *Id.* at 837 (emphasis added).

The defect in Plaintiff's claim against Mr. Williams is that the well-pleaded facts do not allow the court reasonably to infer that Mr. Williams "acted with the state of mind required to establish the alleged constitutional harm," i.e., deliberate indifference. Here, Plaintiff has not alleged that Mr. Williams—simply by virtue of his position as the highest official in CDOC— was subjectively aware of an "excessive risk" to Plaintiff's health or safety and, with a knowing and culpable state of mind in connection with some high-level administration of policies and training, affirmatively disregarded that risk. Allegations that the CDOC director bore some high-level supervisory responsibility for promulgating policies (including AR 700-14), and for officer training on those policies, do not allow this court to infer that Mr. Williams was animated by a sufficiently culpable state of mind concerning Plaintiff. *Dodds*, 614 F.3d at 1198; *Farmer*, 511 U.S. at 834, 837. The lack of subjective culpability on Mr. Williams's part is further emphasized by the court's determination in this very case that AR 700-14 passes constitutional muster. MTD

Order at 5-6.[6]

In sum, this court finds that the allegations against Mr. Williams do not demonstrate the

subjective component of deliberate indifference so as to defeat his assertion of qualified

immunity. *See Cary v. Hickenlooper*, 674 F. App'x 777, 780 (10th Cir. 2016) (affirming

dismissal of inmate's deliberate indifference claim because the complaint "contain[ed] only

conclusory and generalized allegations concerning the defendants' knowledge of the alleged"

harm). Without the subjective element, there is no constitutional violation. Without a

constitutional violation, Mr. Williams is entitled to qualified immunity. *See A.M. v. Holmes*, 830

F.3d 1123, 1134-35 (10th Cir. 2016) (explaining that "if the plaintiff fails to establish either

prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense").

***Clearly established law.*** Nevertheless, for the sake of completeness because this is a

recommendation, the court also evaluates the clearly established prong of the qualified immunity

analysis. The court finds that Plaintiff has failed to plead facts sufficient to allege that Mr.

Williams violated Plaintiff's clearly established rights. Plaintiff points to no law putting Mr.

Williams on notice, "beyond debate," that any action he is alleged to have undertaken—

including the promulgation of a policy this court has found to be constitutional—would have

_____

[6] If Plaintiff intends to allege that Mr. Williams violated Plaintiff's rights by not adhering to the
requirements of that regulation, that also would not give rise to an Eighth Amendment violation.
*See, e.g., Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional
violations do not lose their qualified immunity merely because their conduct violates some
statutory or administrative provision."); *Porro v. Barnes,* 624 F.3d 1322, 1329 (10th Cir. 2010)
("violation of a prison regulation does not give rise to an Eighth Amendment violation absent
evidence the prison official's conduct failed to conform to the constitutional standard"); *Hovater
v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("a failure to adhere to administrative
regulations does not equate to a constitutional violation").

violated Plaintiff's Eighth Amendment rights. *Mullenix*, 577 U.S. at 16. Indeed, Plaintiff does

not cite any relevant case law, either in the lengthy legal argument in the complaint, SAC at 11-

13, or in the response to the Motion to Dismiss. In short, Plaintiff has failed to meet the burden to

identify the clearly established law. *See Thomas*, 607 F.3d at 669.

Because Plaintiff has failed to satisfy the heavy two-part burden triggered by Mr.

Williams's assertion of qualified immunity, the court finds that Mr. Williams is entitled to

qualified immunity. Therefore, the court respectfully **RECOMMENDS** that the Motion to

Dismiss be **GRANTED** to the extent it seeks to dismiss the Section 1983 claims brought against

Mr. Williams, and that all Section 1983 claims against Mr. Williams be **DISMISSED WITH**

**PREJUDICE**.[7]

### 2. Ms. Mitchell

It is difficult to draw out from the Second Amended Complaint any kind of claim against

Ms. Mitchell. While it is not the role of this court to advocate for pro se litigants, to scour the

record to piece together claims for them, or to craft arguments for them, *see Hall*, 935 F.2d at

1110, this court is mindful of the liberal construction appropriate for a pro se plaintiff's

complaint. The court therefore looks to Plaintiff's allegations concerning Ms. Mitchell—which

are that she has "an exceptionally bad attitude towards transgender offenders, . . . which shows

---

[7] *See, e.g.*, *Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing district court to grant defendants' motion to dismiss based on qualified immunity against pro se plaintiff's Section 1983 claims "with prejudice"); *Weeks v. Barkman*, No. 20-cv-00544-PAB-NYW, 2021 WL 4146001, at *4 n.6 (D. Colo. Sept. 13, 2021) (where Magistrate Judge did not recommend whether dismissal of claim should be with or without prejudice "[t]he Court will dismiss the claim against [the defendant] with prejudice because he is entitled to qualified immunity") (citing *Clark*, 625 F.3d at 692, and *McCrary v. Jones*, 2015 WL 873641, at *6 (W.D. Okla. Feb. 27, 2015) (dismissing claim with prejudice where defendant was entitled to qualified immunity)).

up in the Plaintiffs [sic] parole hearing audio in September 2020," and that she "routinely participate[s] in transgender bashing and malicious comments resulting in discrimination" (SAC at 10-11)—and construes them as an attempt to describe the detrimental impact of Ms. Mitchell's conduct on Plaintiff's living conditions and to plead an Eighth Amendment deliberate indifference claim. *See* Motion to Dismiss at 12-13 (interpreting the complaint as attempting to plead that Mitchell acted with deliberate indifference in violation of the Eighth Amendment).

    ***Constitutional violation/clearly established law.*** The court finds that, as a matter of law of long-standing duration, these allegations do not give rise to an Eighth Amendment violation.

    No matter how inappropriate or offensive, verbal harassment (and even threats) do not state a viable constitutional claim. *Barney v. Pulsipher*, 143 F.3d 1299, 1311, 1313 n.11 (10th Cir. 1998) ("Although [plaintiffs alleged] severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."). The Tenth Circuit has repeatedly reiterated this principle. *See, e.g., McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Struble v. Haynes*, 202 F.3d 283 (Table), 1999 WL 1277059, at *1 (10th Cir. Dec. 20, 1999) ("Harsh, even threatening language does not amount to a constitutional violation."); *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse . . . is insufficient to establish a constitutional violation"); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (verbal sexual harassment toward inmate was not a constitutional violation); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) ("necessarily excluded from the cruel and unusual punishment inquiry" are

"verbal threats and harassment"). Plaintiff may have alleged that Ms. Mitchell engaged in boorish behavior, but "[a]n action by a prison guard may be malevolent yet not amount to cruel and unusual punishment." *Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011).

Plaintiff points to no contrary precedent. Therefore, the court finds that Plaintiff has not carried the burden of identifying a clearly established right and "existing precedent [that] placed the . . . constitutional question beyond debate," such that "every reasonable official would have understood that what [s]he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) (quoting *Mullenix*, 577 U.S. at 11).

Having concluded that Ms. Mitchell is entitled to qualified immunity on any Eighth Amendment claim, the court turns to Ms. Mitchell's argument that the allegations against her also fail to state an equal protection claim. Motion to Dismiss at 11-12. To be sure, it is unclear what claims Plaintiff intends to bring against which Defendants. But if it is Plaintiff's purpose to attempt to plead an equal protection violation against Ms. Mitchell, the court finds that she is shielded by qualified immunity on that claim, too.

The Equal Protection Clause is triggered only when the government treats someone differently than another who is similarly situated." *S. Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1266 (10th Cir. 1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional . . . violations, . . . and purposeful discrimination is an essential element of an equal protection violation." *Welsh v. City of Tulsa*, 977 F.2d 1415, 1419-20 (10th Cir. 1992) (citing *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 n.1 (10th Cir. 1990)) (alterations original). Discriminatory intent, for purposes of a Section 1983 equal protection

claim, "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

When evaluated pursuant to these standards, Plaintiff's allegations concerning Ms. Mitchell fail to plausibly allege an equal protection claim. Plaintiff's complaint is notably lacking in factual specifics, including what Ms. Mitchell actually said at Plaintiff's parole hearing in September 2020; how her "transgender bashing" has manifested itself; and what "malicious comments she has actually made, and how exactly have those comments "result[ed] in discrimination" toward Plaintiff. *See* SAC at 10-11. Without factual enhancement, no plausible inference of purposeful discrimination can be drawn from these "unadorned, the-defendant-unlawfully-harmed me accusation[s]." *Iqbal*, 556 U.S. at 678. They are simply too conclusory to support a plausible claim for relief.

Plaintiff's failure to allege a constitutional violation, standing alone, entitles Ms. Mitchell to qualified immunity on any equal protection claim, but Plaintiff also has not identified any clearly established law that would have put every reasonable officer on notice that the alleged conduct here amounted to a violation of the Constitution. While the use of derogatory language is no cause for praise, and may be "unprofessional and deplorable," long-established precedent confirms that it "does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Id.*; *see also, e.g.*, *Ortiz v. Cicchitello*, No. 1:23-cv-00264, 2023 WL 3044603, at *2–3 (M.D. Pa.

Apr. 21, 2023) ("Ortiz does not allege any accompanying violation or mistreatment that may permit an equal protection claim. He simply complains of 'harassment' and a racially derogatory remark, which, although 'unprofessional and inexcusable,' do not implicate a constitutional infringement.") (internal citations omitted); *Richard v. Martin*, No. 3:20-cv-1354 (CSH), 2022 WL 5246814, at *11 (D. Conn. Oct. 6, 2022) (claims of verbal harassment do not state a claim under the Equal Protection Clause of the Fourteenth Amendment); *Talley v. Starkey*, No. 17-cv-85-SM, 2017 WL 11707951, at *1–2 (D.N.H. Aug. 17, 2017) ("Taken as true, Talley's allegations describe behavior by Starkey that is both unprofessional and reprehensible, but the allegations do not describe any action by the defendant that violated Talley's equal protection rights. Starkey's actions, as described, amount to no more than verbal harassment."), *report and recommendation adopted*, 2017 WL 11707950 (D.N.H. Sept. 5, 2017); *Jones v. Porter*, No. 99-1326, 211 F.3d 1269 (Table), 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level.").

In conclusion, because Plaintiff has failed to carry Plaintiff's burden to satisfy both prongs of the qualified immunity analysis, the court finds that Ms. Mitchell is entitled to qualified immunity. Therefore, the court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** to the extent it seeks to dismiss the Section 1983 claims brought against Ms. Mitchell, and that all Section 1983 claims against Ms. Mitchell be **DISMISSED WITH PREJUDICE**.

**B.        Official Capacity Claims**

Insofar as Plaintiff brings claims against Mr. Williams and Ms. Mitchell in their official capacities,[8] those claims are also untenable due to the lack of a cognizable constitutional violation. *See Crowson v. Wash. Cnty.*, 983 F.3d 1166, 1186 (10th Cir. 2020) ("[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation.") (collecting cases).[9] Accordingly, the court respectfully **RECOMMENDS** that these official capacity Section 1983 claims against Mr. Williams and Ms. Mitchell be **DISMISSED WITH PREJUDICE**. *See Clark*, 625 F.3d at 692.

**III.    The CADA Claim**

Plaintiff brings a claim for "[v]iolation of CADA[,] C.R.S. 24-34-306." SAC at 8. This is a provision of the Colorado Anti-Discrimination Act ("CADA"). CADA has several subparts prohibiting discrimination on protected class categories in employment, housing, public accommodation, and advertising. Colo. Rev. Stat. §§ 24-34-401, 501, 601 and 701, *et seq.* Plaintiff does not specifically allege which part(s) of article 34 are at issue. Nonetheless, as to discrimination prohibited by any part, Section 24-34-306 provides for certain administrative charges to be filed with the Colorado Civil Rights Division ("CCRD"):

---

[8] Because Mr. Williams has left CDOC, his "successor is automatically substituted as a party." *See* Fed. R. Civ. P. 25(d). The court therefore treats this official capacity claim as brought against the current executive director.

[9] The court assumes that Plaintiff does not seek damages against these state officials in their official capacities, for which they would be entitled to assert Eleventh Amendment immunity. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (recognizing that state employee sued in his official capacity "may also assert Eleventh Amendment immunity as an 'arm' of the state in that she assumes the identity of the [state entity]"); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that a state official sued in his or her official capacity is generally entitled to assert the same immunities as the governmental entity for which he or she works).

Any person claiming to be aggrieved by a discriminatory or an unfair practice as defined by parts 4 to 7 of this article 34 may . . . make, sign, and file with the [Colorado Civil Rights] division a verified written charge stating the name and address of the respondent alleged to have committed the discriminatory or unfair practice, setting forth the particulars of the alleged discriminatory or unfair practice, and containing any other information required by the division.

C.R.S. § 24-34-306(1). The statute further provides for a private right of action in court:

No person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by parts 4, 5, and 7 of this article 34 and excluding part 6 of this article 34 and section 24-34-505.6 without first exhausting the proceedings and remedies available to the person under this part 3 unless the person shows, in an action filed in the appropriate district court, by clear and convincing evidence, that the person's ill health which is of such a nature that pursuing administrative remedies would not provide timely and reasonable relief and would cause irreparable harm. This subsection (14) does not apply to civil actions filed in district court based on alleged discriminatory or unfair practices prohibited by either part 6 of this article 34 or section 24-34-505.6.

*Id.* at § 24-34-306(14).

Defendants argue this claim fails to meet the pleading requirements of Rule 8 because Plaintiff does not identify which Defendants allegedly violated CADA, which provision(s) they violated, or how they did so. Motion at 6-7. In their Motion, Defendants do not cite any caselaw in support of this argument. However, in their reply, Defendants cite *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007), and *Mountain View Pharmacy v. Abbott Labs.,* 630 F.2d 1383, 1388 (10th Cir. 1980), for the necessity of pleading what each defendant did, when, how, and what legal right the plaintiff believes the defendant violated.

Although in the Second Amended Complaint Plaintiff did not specifically tie the lengthy factual allegations to the CADA claim, giving the pleading all reasonable inferences in Plaintiff's favor as the court must at this phase, the Second Amended Complaint plausibly alleges for this claim that Plaintiff sent "kites" to Dr. Butler as the chief of psychiatry regarding, among other

things, Plaintiff's alleged distress from being housed in a male facility. SAC at 9. Plaintiff asserts

Dr. Butler did not provide a lawful response to Plaintiff's requests for treatment and housing

reassignment based on Plaintiff's being either transgender or having gender dysphoria. As to Mr.

Williams, Plaintiff appears to allege Mr. Williams is responsible for the CDOC policy discussed

above, AR 700-14, concerning housing and treatment of inmates who are transgender or inmates

diagnosed with gender dysphoria, which Plaintiff alleges discriminates against such persons on

the basis of gender expression or identity.

Given these reasonable inferences, and the lack of argument by Defendants Williams and

Butler concerning the elements of a CADA claim,[10] the court finds that these two Defendants

have not met their burden (as the movants) to show that Plaintiff's allegations fail to state a

plausible claim for relief against them.

As to Ms. Mitchell (the Community Parole Officer), however, Defendants do have a

point. As to this Defendant, as noted above, Plaintiff alleges only that Ms. Mitchell made

discriminatory statements in Plaintiff's September 2020 parole hearing on the basis of Plaintiff's

being transgender. SAC at 11 (alleging that the "Parole hearing audio of Plaintiff's CPO . . .

shows DOC's attitude to Plaintiff as a transgender offender"). Plaintiff thus alleges that Mitchell

---

[10] This court is unable to locate any cases addressing a prisoner's claim under CADA on its
merits. As noted above, CADA prohibits discrimination on protected bases in employment,
housing, places of public accommodation, and advertising. C.R.S. §§ 24-34-401, 501, 601 and
701 *et seq*. Defendants do not argue that the Second Amended Complaint fails to allege conduct
that comes within any of those categories, and the court further observes that Mr. Williams and
Dr. Butler have been named as defendants in a class action under CADA brought by transgender
women in CDOC custody *See Raven v. Polis*, 479 P.3d 918, 919 (Colo. 2021) (noting that
"Plaintiffs seek declaratory, injunctive and monetary relief for alleged violation of [CADA]").
Defendants do not address the impact of *Raven*, if any, on Plaintiff's CADA claims here.

made discriminatory statements in the context of a parole hearing, but Plaintiff does not allege that Mitchell actually took any action against Plaintiff. Plaintiff does not allege that Mitchell denied him parole on that basis, or that she otherwise caused Plaintiff's parole to be denied. Plaintiff does not allege that Ms. Mitchell's speech by itself, devoid of any conduct that CADA reaches, would violate CADA. To the contrary, as noted above, CADA defines unlawful discrimination only in specific contexts. C.R.S. §§ 24-34-401, 501, 601, 701 *et seq*. As the Second Amended Complaint does not allege any factual connection between those statutory contexts and a parole hearing, Plaintiff's allegations do not put Ms. Mitchell on sufficient notice of conduct that would allegedly violate CADA.

Defendants next argue that the court lacks subject matter jurisdiction over this claim because Plaintiff did not exhaust the administrative remedy process before the CCRD. Defendants argue that the completion of a CCRD proceeding is a jurisdictional requirement under Colo. Rev. Stat. § 24-34-306(14). They cite a Colorado state court opinion, *City of Colo. Springs v. Conners,* 993 P.2d 1167, 1169 n.3 (Colo. 2000), in support.

However, Plaintiff responds that the CCRD webpage says the CCRD "cannot handle" and does "not have jurisdiction over claims involving . . . . [p]risoner's rights." Resp. at 1 (quoting from https://ccrd.colorado.gov/discrimination). Plaintiff therefore argues that it was proper to "compl[y] with the grievance process giving the State of Colorado and its political subdivision notice of intent to sue and of the facts involved." *Id.* Defendants reply that this does not save the CADA claim because Plaintiff asserts this fact only in the response to the Motion to Dismiss, not in the SAC. Reply at 1-2.

The court can take judicial notice of the contents of the CCRD webpage. *See, e.g., Sierra*

*Club v. U.S. Env'l Prot. Agency*, 964 F.3d 882, 893 n.9 (10th Cir. 2020) (taking judicial notice of agency's guidance document publicly available on its website). Because the CCRD webpage states that the CCRD cannot consider prisoner rights cases, the court finds it inappropriate at this juncture to dismiss the CADA claim for failure to exhaust. The CCRD's disavowal of jurisdiction over "prisoner's rights" claims suggests either a fact issue of whether Plaintiff's CADA claim counts as a "prisoner's rights" claim, or a legal issue of whether CADA reaches otherwise prohibited discrimination that occurs in prison. But as noted above, resolution of the latter legal issue is premature without briefing from the parties.

Moreover, Defendants do not cite any federal case finding that CADA's exhaustion requirement functions as a jurisdictional bar in federal court. Most recently, a panel of the Tenth Circuit declined to address "whether we would be bound by a state-court view that an issue is jurisdictional." *Scott v. Cary*, 829 F. App'x 334, 336–37 (10th Cir. 2020) (citing *Odom v. Penske Truck Leasing Co.*, 893 F.3d 739, 742 (10th Cir. 2018), for holding that "[w]hen a state proscribes its own courts' jurisdiction over particular subject matter, it does not divest the authority of federal courts within its borders. This is because, as an axiom of our federal system, Congress alone defines the lower federal courts' subject-matter jurisdiction.").

Accordingly, the court respectfully **RECOMMENDS** that the CADA claim be **DISMISSED only with respect to Ms. Mitchell**. Based on the deficiencies in that claim articulated above, and because Plaintiff has already had two chances to amend, the court recommends dismissing that claim **WITH PREJUDICE**. *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (district court may dismiss a pro se complaint with prejudice if no 'amendment could cure [the] defect[s]").

**IV.     The ADA Claim**

Plaintiff includes the ADA, "42 U.S.C. § 12181, *et seq.,"* in the list of claims. SAC at 8.

Section 12181 begins Subchapter III of the ADA, which applies to "public accommodations and

services operated by private entities."

Defendants argue that Plaintiff fails to state a claim under the ADA for several reasons.

The court agrees with Defendants that, to the extent Plaintiff intends to bring an ADA claim

against the Defendants in their individual capacities, Subchapter III of the ADA ("Public

Services") does not provide a right of action against Defendants in their individual capacities.

Under this subchapter, "[n]o individual shall be discriminated against on the basis of disability in

the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or

leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Even assuming

that a state prison (or provision of medical or mental health services in a prison) comes within

the ADA's definition of "public accommodation," Plaintiff does not allege that Defendants in

their individual capacities own, lease or operate a place of public accommodation. Nor could

Plaintiff so allege. Accordingly, the court recommends dismissing the ADA claim to the extent

Plaintiff brings it against Defendants in their individual capacities. *See, e.g., Montez v. Romer,* 32

F. Supp. 2d 1235, 1241 (D. Colo. 1999) ("individuals who do not meet the statutory definition of

operators of places of public accommodation are not subject to liability under title III of the

Disability Act.").[11]

---

[11] Even very liberally construing the SAC as though Plaintiff had alleged Subchapter II of the
ADA (public services), that subchapter likewise does not provide a right of action against
individuals. *See* 42 U.S.C. § 12132 (prohibiting discrimination by a "public entity"); *Montez*, 32

As for the ADA claim against Defendants in their *official* capacities, Defendants argue that the SAC allegations do not plausibly support the elements of a public accommodations claim under the ADA.[12] They argue Plaintiff must allege "(1) he is a qualified individual with a disability, (2) who was excluded from participation or denied the benefits of a public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." Motion at 8 (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1193 (10th Cir. 2007)). Defendants argue that Plaintiff does not allege any of the three elements. They further argue that Plaintiff alleges only that the request for placement in a female facility was denied because it was a medical issue, not an ADA accommodation issue, and that the requests for medical care and treatment were denied because those too could not be addressed by ADA accommodation requests. Defendants cite in support a CDOC policy, AR 750-04, available online.

In response, Plaintiff argues that the Fourth Circuit recognizes gender dysphoria may be protected as a disability under the ADA, citing *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), *pet'n for cert. denied, Kincaid v. Williams,* No. 22-633, 143 S. Ct. 2414 (June 30, 2023). In reply, Defendants recognize that at least one recent case in this court has found *Williams* persuasive on this point. Reply at 4 (citing *Griffith v. El Paso Cnty.,* No 21-cv-387-CMA-NRN, 2023 WL 2242503, at *17 (D. Colo. Feb. 27, 2023), *report and recommendation adopted,* No. 21-cv-00387-CMA-NRN, 2023 WL 3099625 (D. Colo. Mar. 27, 2023), *appeal pending*).

F. Supp. 2d at 1240-41.
[12] The court will address the ADA official capacity claim against Governor Polis and the Doe Defendants below.

Defendants argue that even if this court likewise finds gender dysphoria may be a disability under the ADA, Plaintiff still doesn't plausibly support the second and third elements of an ADA claim: that he was excluded from participation or denied a benefit by reason of a disability. Reply at 4. They reiterate that the Second Amended Complaint only alleges the accommodation request was denied because Plaintiff used the wrong request form. *Id.*

As to whether Plaintiff plausibly alleges that Plaintiff has a disability within the meaning of the ADA, in *Griffith*, Magistrate Judge N. Reid Neureiter noted:

> While the ADA defines the term "disability" broadly to include "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(A), it excludes "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, [and] other sexual behavior disorders," *Id.* § 12211(b) (emphasis added).

*Griffith*, 2023 WL 2242503, at *17 (emphasis original). Judge Neureiter found *Williams* persuasive that gender dysphoria is not subject to the ADA's exemption and thus could be a disability. *Id.* He further found that an earlier case from this court, *Michaels v. Akal Sec., Inc.,* No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010)—which found that gender dysphoria was a gender identity disorder subject to the exemption—was not binding or persuasive. Judge Neureiter noted that *Michaels* addressed this issue "summarily." *Griffith*, 2023 WL 2242503, at *17. In adopting the recommendation in *Griffith*, Judge Arguello did not specifically address the ADA claim. *Griffith*, 2023 WL 3099625.

In the few months that have passed since *Griffith* was decided, the U.S. Supreme Court denied the petition for certiorari in *Williams*. In doing so, Justices Alito and Thomas filed a lengthy dissent to the denial, noting that the Fourth Circuit "effectively invalidated a major

provision of the . . . ADA." *Kincaid,* 143 S. Ct. at 2414-15. Two of the nine Justices clearly disagree with the reasoning of *Williams* and Griffith but were unable to persuade a majority to review the issue at this time. It thus remains a "question that divides the parties, and courts around the country," "whether gender dysphoria—a diagnosis that did not exist when Section 12211 was enacted—belongs in the category 'gender identity disorders not resulting from a physical impairment' excluded by the section." *Kozak v. CSX Transp., Inc.*, No. 20-cv-184S, 2023 WL 4906148, at *4 (W.D.N.Y. Aug. 1, 2023) (concluding gender dysphoria is not excluded under the ADA).[13]

 At this point, this court finds no authority from the Tenth Circuit deciding whether gender dysphoria is excluded from the ADA or not. As noted, *Griffith* is currently on appeal to the Tenth Circuit. *Griffith v. El Paso Cnty.,* No. 23-1135 (10th Cir.). The ADA issue appears to be among the several issues that the appellant briefs in that appeal. *Id.* (Appellant's Brief filed August 21, 2023). This court concludes that at the very least, while the *Griffith* appeal is pending, and in the absence of fuller briefing from the parties, it would be premature to decide this issue against Plaintiff on a motion to dismiss.

 As to the second and third elements of the ADA claim, Plaintiff alleges that Plaintiff was deprived of medical and mental health care and deprived of housing in a female facility. These are benefits of a public entity under Subchapter II.[14] Plaintiff further alleges that this alleged

---

[13] The court notes that another case alleging an ADA claim for alleged discrimination on the basis of gender dysphoria in the prison or jail context, *McGinn v. El Paso Cnty.,* 1:22-cv-01387-WJM-MDB (D. Colo.), settled before the court ruled on the defendants' motion to dismiss.

[14] Defendants do not provide any argument as to whether the denied care and housing are also services provided as a public accommodation under Subchapter III. In the absence of developed arguments on that issue, it would be premature for the court to address that issue.

discrimination was because of the disability of gender dysphoria. SAC at 9-10 ("Plaintiff shouldn't have to suffer from harassment that wouldn't be occurring if Plaintiff was placed with other females, and that is exactly what is happening with other transgender individuals who have been moved from male placement to female placement. [The Gender Dysphoria Committee] does do this, they just don't want to do it in Plaintiffs case. Plaintiff gets treated in a negative way by staff because of Plaintiffs gender dysphoria."). Plaintiff further alleges that "Plaintiff knows that other offenders receive hormones, gender conforming surgery, female facility placement, and psychotherapy while incarcerated in Colorado Department of Corrections and these other offenders are in the identical situation as the Plaintiff." *Id.* at 10. The court concludes that these allegations plausibly allege the third element of causation and suffice to give Defendants Williams and Butler, in their official capacities, notice of the ADA claim against them. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

As to Defendant Mitchell in her official capacity, because the official capacity claim is effectively against CDOC, this claim is duplicative of that against Defendant Williams in his official capacity. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (official capacity claim is "to be treated as a suit against the entity"); *see, e.g., Settles v. Shrader,* No. 1:20-cv-02064-DDD-STV, 2022 WL 20518221, at *3 (D. Colo. Nov. 4, 2022) (adopting recommendation). On that basis, the official capacity ADA claim against Mitchell should be dismissed.

Accordingly, the court **RECOMMENDS** (1) that the ADA claim against Defendants in their **individual capacities** and this claim against Defendant Mitchell in her official capacity be

**DISMISSED WITH PREJUDICE**, and (2) that the Motion to Dismiss the official capacity ADA claim be **DENIED as to Defendants Williams and Butler**.

## V.     Compensatory Damages Against Dr. Butler

The court next considers Defendants' argument that Plaintiff is barred from recovering compensatory damages on any Section 1983 claim against Dr. Butler for failing to allege the existence of a physical injury, as required under the PLRA. *See* Motion at 13-14.

In evaluating this argument, the court makes two preliminary observations. First, it observes that Judge Sweeney's ruling on the first motion to dismiss, finding that "Plaintiff's claim for compensatory damages against Dr. Butler in her individual capacity fails" because of the physical injury requirement, MTD Order at 8, is not dispositive of the question now before this court. Plaintiff has amended the claim against the claim against Dr. Butler, and this court must evaluate the no-compensatory-damages argument in light of Plaintiff's allegations in the Second Amended Complaint. Second, having concluded that Plaintiff's claims against Mr. Williams and Ms. Mitchell are barred by qualified immunity, this court has found that Plaintiff is not entitled to pursue *any* damages, compensatory or otherwise, against these Defendants pursuant to Section 1983. Therefore, the court understands the compensatory damages question to affect only the Eighth Amendment claim against Dr. Butler.

The PLRA provides in relevant part that a "prisoner confined in a jail, prison, or other correctional facility" may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).[15] Here,

---

[15] This provision does not bar requests for declaratory or injunctive relief. *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999).

Plaintiff seeks "nominal, monetary, punitive damages . . . of $350,000 per Defendant," SAC at 6, stemming from Plaintiff's "extreme distress being suffered . . . due to current housing situation in a male facility and gender dysphoria." *Id.* at 9. According to Plaintiff, two manifestations of that "extreme distress" are "head banging [and] self-mutilation." *Id.* at 9. Defendants argue that Plaintiff's claims for compensatory damages against the individual Defendants are barred because "'self-mutilation' falls within section 1997e(e)'s bar on compensatory damages." Motion at 13-14.[16]

This court respectfully acknowledges that, in several cases, other judges of this court have concluded that claims of self-harm "are insufficient to withstand the 'physical injury' requirement of Section 1997e(e)." *Hall v. Elbe*, No. 18-cv-01056-PAB-NRN, 2022 WL 16855691, at *13 (D. Colo. Nov. 9, 2022); *see also Argetsinger v. Ritter*, No. 08-cv-1990-PAB-KMT, 2009 WL 3201088, at *4 (D. Colo. Sept. 29, 2009) (rejecting contention that inmate's request for damages for self-inflicted injuries was meant to remedy "severe emotional distress and mental anguish," and holding that "self-inflicted injuries do not constitute a 'physical injury' under the PLRA"). But as the Motion to Dismiss acknowledges, the Tenth Circuit has not addressed the question whether damages for "self-mutilation"—in this case, stemming from "extreme distress" allegedly caused by Dr. Butler—are barred under Section 1997e(e). *See* Motion at 13.

Because the Tenth Circuit has not yet ruled on the question of "whether injuries of a self-

---

[16] Section 1997e(e) does not prohibit recovery of injunctive relief or punitive damages for violations of prisoners' constitutional rights. *Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001) ("We believe that the salient fact is that Congress simply did not choose to provide a restriction on punitive damages.").

inflicted nature . . . can constitute *de minimis* injuries for PLRA purposes," this court finds it premature to impose a blanket ban on Plaintiff's ability to pursue such damages at this stage of the proceedings. *See Lynch v. Lewis*, No. 7:14-CV-24 HL, 2015 WL 1296235, at *14 (M.D. Ga. Mar. 23, 2015). This court, in exercising its obligation to afford a generous construction to a pro se litigant's allegations, concludes that "[f]urther factual development of Plaintiff's claims could establish an adequate physical injury for PLRA purposes." *See id.* Whether Plaintiff can ultimately make this showing remains to be seen, but for now, his pleading is sufficient to proceed on this point.

Therefore, this court respectfully **RECOMMENDS** that the Motion to Dismiss, insofar as it asks the court to bar any potential recovery of compensatory damages against Dr. Butler, **BE DENIED**.

## VI.     Claims Against Governor Polis and the Doe Defendants

Finally, pursuant to 28 U.S.C. § 1915(e), the court addresses the claims against Governor Polis (in his individual and official capacities) and the Doe Defendants. The Second Amended Complaint does not add allegations to show personal participation by Governor Polis in the alleged constitutional violations, as Judge Gallagher noted is required for the claims in the Governor's individual capacity. ECF No. 11 at 5. Nor does the Second Amended Complaint allege any conduct of the Governor for the CADA or ADA claims, as would be required to give him sufficient notice of those claims under this court's analysis above. In addition, the official capacity claim against the Governor should be dismissed "because any injunctive relief awarded in this action will be directed to CDOC officials, not the Colorado governor." ECF No. 11 at 5.[17]

---

[17] In *Raven*, the Colorado Supreme Court allowed a CADA claim to proceed against the

Thus, for the same reasons Judge Gallagher stated previously, the court RECOMMENDS again dismissing the claims against Governor Polis.

As to the John and Jane Doe Defendants, Plaintiff appears to allege that some of the Doe Defendants are non-medical staff of CDOC (case managers, the boss of a case manager, and a captain), with whom he had the intake process or to whom he sent several of the "kites" or grievances that he alleges he also sent to Dr. Butler. SAC at 9, 10. Plaintiff alleges the Doe case manager "Willard" "kept telling [Plaintiff] that it was in his boss's hands[,] JANE DOE 5. JANE DOE 5 had stated to the Plaintiff that the grievances were being taken care of appropriately and getting processed properly. Plaintiff kept catching JANE DOE 5 in lies about whether grievances were being 'chroned' properly in the DOC chronological entry system… JANE DOE 5 . . . [gave Plaintiff] the run around to prevent the Plaintiff from filing grievances against staff." *Id.* at 10. But as in his original complaint, Plaintiff does not allege that the case managers (including Jane Doe 5, the boss of case manager Willard) did anything more than tell Plaintiff that his treatment or placement was not up to them (SAC at 8), failed to respond to his grievances, or at most frustrated his ability to file further grievances about the handling of his earlier grievances. Such conduct does not violate the Eighth Amendment because Plaintiff does not allege the case managers delayed or denied his grievances with deliberate indifference to a risk of substantial harm. *See, e.g., Bird v. Lampert,* 839 F. App'x 218, 222-23 (10th Cir. 2020); *Blaurock v. Kan. Dept. of Corr.,* 526 F. App'x 809, 813-14 (10th Cir. 2013). Nor does this conduct violate the equal protection clause; all of the same problems the court notes above with Plaintiff's equal

---

Governor in his official capacity. *Raven*, 479 P.3d at 920-23. But that case alleges facts as to the governor (*id.* at 919), which Plaintiff does not do here. *Raven* also does not address federal constitutional claims.

protection claim against Mr. Williams apply to the non-medical Doe staff as well. Nor does Plaintiff allege any conduct as to the non-medical Does that would put them sufficiently on notice of a CADA or ADA claim against them.

Finally, Plaintiff alleges other Doe Defendants are "medical professionals," namely nurse practitioners, physician assistants, and a medical provider whom Plaintiff believes was a doctor. SAC at 8. Plaintiff alleges that the medical Doe Defendants met with Plaintiff and said they were not "able to authorize any sort of treatment for gender dysphoria," could not "prescribe hormones and only the GDC would make that decision," and to "kite" Dr. Butler with the request. *Id.* But again, Plaintiff does not allege that any of the unnamed medical staff personally participated in denying Plaintiff the requested care and placement. Nor does Plaintiff allege conduct by the medical Doe Defendants that would put them on notice of a CADA or ADA claim against them. As such, the SAC again fails to show entitlement to relief against the medical Doe Defendants.

The court therefore **RECOMMENDS** dismissing the claims against Governor Polis and all Doe Defendants. Because Plaintiff has had multiple opportunities to remedy these defects, the court recommends dismissal of these claims with prejudice.

## CONCLUSION

For the reasons stated above, it is respectfully **RECOMMENDED** that the Motion to Dismiss, ECF No. 105, be **GRANTED IN PART AND DENIED IN PART**.

The court recommends dismissal of the following claims in the manner indicated:

| CLAIM | RECOMMENDED DISPOSITION |
|---|---|
| All claims challenging AR 700-14, against any Defendant, previously dismissed with prejudice | Dismissed with prejudice, and Plaintiff advised that further attempts to resurrect this claim could result in sanctions |
| All claims purporting to reraise the equal protection claim, against any Defendant, previously dismissed with prejudice | Dismissed with prejudice, and Plaintiff advised that further attempts to resurrect this claim could result in sanctions |
| Section 1983 claims against Dean Williams in his individual and official capacities | Dismissed with prejudice |
| Section 1983 claims against Theresa Mitchell in her individual and official capacities | Dismissed with prejudice |
| Colorado Anti-Discrimination Act claim against Theresa Mitchell | Dismissed with prejudice |
| Americans With Disabilities Act claim against Defendants Butler, Williams, and Mitchell, in their individual capacities | Dismissed with prejudice |
| Americans With Disabilities Act claim against Defendant Mitchell, in her official capacity | Dismissed with prejudice |
| All claims against Governor Polis and Doe Defendants | Dismissed with prejudice |

The court recommends that the following claims proceed: Plaintiff's Colorado Anti-Discrimination Act claims against Defendants Williams and Butler; Americans With Disabilities Act claims against Defendants Williams and Butler in their official capacities only; and any claim for compensatory damages against Defendant Butler.

The court recommends that Defendants Mitchell, Polis, and all Doe Defendants be dismissed with prejudice.[18]

---

[18] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado.

DATED: September 5, 2023          BY THE COURT:

Susan Prose
United States Magistrate Judge

---

28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").